STATE OF NORTH CAROLINA v. STICARDO M. McCULLERS

No. 554A93

(Filed 28 July 1995)

**1. Evidence and Witnesses § 1289 (NCI4th)— confession— detective's urging defendant to tell the truth— voluntariness**

The trial court properly concluded that defendant's statements to police officers were voluntarily and freely made where the detective did not accuse defendant of lying, but rather informed him of the crime with which he might be charged and urged him to tell the truth and think about what would be better for him; at the time the detective made the statements defendant contended were coercive, the detective had already identified for defendant, and defendant had acknowledged, the others with him the night of the murder; and defendant's contention that he was intimidated or coerced by the detective's profanity was without merit in light of defendant's own use of profanity.

**Am Jur 2d, Evidence §§ 548, 565.**

**Voluntariness of confession as affected by police statements that suspect's relatives will benefit by the confession. 51 ALR4th 495.**

**2. Homicide § 263 (NCI4th)— felony murder conviction—sufficiency of evidence of underlying felony**

Evidence was sufficient to show that defendant committed a robbery with a dangerous weapon, the underlying felony supporting defendant's felony murder conviction, under the theory of acting in concert where the evidence tended to show that defendant and his companions traveled to a nearby town "to get some money"; they drove around until they found the victim outside a motel where they beat him with a bat and took his money; one of defendant's companions encouraged a young child to go to motels and stores, beat people with bats, and "get paid" by going to motels and stores; defendant testified that, after he hit the victim on the head and the victim fell down, everybody jumped on him and tried to take his money; defendant watched everyone search the victim's pocket; there was substantial evidence that it was the common plan of the entire group, including defendant, to assault and rob the victim and that personal property of the victim was taken by defendant's companion by the use of a dangerous weapon whereby the victim's life was endangered.

**Am Jur 2d, Homicide §§ 72-74.**

**3. Criminal Law § 266 (NCI4th)— continuance—no showing of prejudice—denial proper**

The trial court did not err in denying defendant's motion to continue made when the State provided defendant with a list of six possible witnesses on the Friday afternoon before the trial was to begin on Monday in order for defendant to investigate these witnesses where defendant did not indicate what information the witnesses may have had that could be exculpatory, who the witnesses were, or how they related to the case, and there was no showing how defendant would have been better prepared had the continuance been granted or that defendant was materially prejudiced by the denial of his motion.

**Am Jur 2d, Continuance § 42.**

**Hostile sentiment or prejudice as ground for continuance of criminal trial. 39 ALR2d 1314.**

**4. Indigent Persons § 27 (NCI4th)— funds for private investigator—denial proper**

The trial court did not err in denying defendant's motion for funds for a private investigator where defendant failed to indicate

that he would have been deprived of a fair trial without the expert assistance of a private investigator or that there was a reasonable likelihood that an investigator would have materially assisted defendant in the preparation of his case.

**Am Jur 2d, Criminal Law §§ 719, 771, 955, 1006.**

**Right of indigent defendant in state criminal case to assistance of investigators. 81 ALR4th 259.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Bowen, J., at the 2 August 1993 Criminal Session of Superior Court, Wake County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 12 April 1995.

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn, Special Deputy Attorney General, for the State.*

*Harry C. Martin, J. Matthew Martin, and Alan B. Martin for defendant-appellant.*

PARKER, Justice.

Indicted for the first-degree murder of Edward Wayne Clopton ("victim") in violation of N.C.G.S. § 14-17, defendant was tried capitally. The jury found defendant guilty of first-degree murder on the theory of felony murder with the underlying felony being robbery with a dangerous weapon. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to life imprisonment; and the trial court entered judgment accordingly. The jury also found defendant guilty of robbery with a dangerous weapon. The conviction for robbery with a dangerous weapon also being the underlying felony supporting the first-degree murder conviction, the trial court arrested judgment on this conviction.

At trial the State's evidence tended to show that around 9:00 p.m. on 2 July 1992, defendant, Brian Walker, Brian Barbour, Harry Tate, and William Whitley left Clayton, North Carolina, and drove into Raleigh, North Carolina. The group began the evening by looking for someone to assault and rob near the Tower Shopping Center. The group spotted a man walking alone a few blocks from the shopping center and attacked him with baseball bats. The group then stole money and cocaine from the man. During this attack, Harry Tate was accidentally hit in the head with a baseball bat and began to bleed.

The group took Tate to Wake Medical Center; but Tate having stopped bleeding, the group left after a few minutes. The boys then began looking for a store where they could get alcohol. They were unsuccessful, so they drove to "Putt-Putt," where they met some girls who agreed to buy them alcohol. After they drank the alcohol, the group drove to a Waffle House to get something to eat. The group then began looking for someone else to assault and rob. The group wanted to injure someone so that person could suffer like Tate was suffering. They spotted the victim walking in the parking lot of Johnny's Motor Lodge.

Defendant, Tate, Walker, and Whitley attacked the victim. Defendant hit the victim on the head with a bat; the victim fell down, and everybody but defendant jumped on the victim, trying to take his money. At least $3.00 was stolen from the victim by Walker. The evidence showed that defendant and his friends were back in Clayton by 2:15 a.m. on 3 July 1992.

The victim was found lying in the parking lot on 3 July 1992 around 5:30 a.m.; he was still alive. The victim was taken to Wake Medical Center and treated for his injuries. He had brain surgery on two occasions and died on 21 July 1992 from blood clots in his lungs. The victim's cause of death was attributed to the injuries he sustained when attacked by defendant and his friends.

On 5 July 1992 Alice Perry, Whitley's sister, called the Clayton Police Department to report her brother's involvement in the beating and robbery of two men in Raleigh on 2 July 1992. Perry had become concerned when she heard Whitley telling Perry's young child about beating people in motels and stores and that the child could "get paid" at motels and stores. Whitley had also described a beating to Perry's son, the circumstances of which were similar to the beating of the victim in this case.

Defendant presented evidence at trial that he was with his girlfriend and her mother until 10:45 on the night of the murder. Defendant also presented evidence that Brian Barbour, who testified about the events of that night, was actually with his girlfriend on the night of the murder, not in Raleigh, and that the victim was still alive at 2:30 a.m.

Additional facts will be addressed as necessary to the understanding of a particular issue.

[1]  Defendant first assigns error to the trial court's denial of his motion to suppress inculpatory statements made by defendant to police officers. Prior to trial defendant filed a written motion to suppress. A *voir dire* on the motion was held on 26 and 27 May 1993. The trial court, after making findings of fact and conclusions of law, denied defendant's motion.

Before this Court defendant argues that the incriminating portion of defendant's statement was the product of fear or hope, violated defendant's state and federal constitutional rights, and was, hence, inadmissible. Defendant bases his argument on statements made by Detective J.W. Howard of the Raleigh Police Department while questioning defendant. During the interview the following occurred:

Q.  Who knocked the man down?

A.  All of us.

Q.  All of us. You are going to jail. I'm not gonna sit here and tell you a lie, okay. You're going to jail. You are gonna be charged with murder. What's gonna be to your favor is for you to tell the truth and that's all we want is the truth.

A.  So you're saying either way, I'm going to jail?

Q.  No, but there's a big difference. Don't you think a Judge . . .

A.  But that's what you just said.

Q.  Listen to me. Don't you think a Judge, a jury and society will look upon you much better, if you say, I didn't mean to kill the man, I didn't know he was gonna die, than [for] you to sit there and keep denying that you done it, when I've got all these other witnesses that say you did. Which way looks the best for you? That's what I'm telling you. And you need to make it look as good for you as you can, because you're in deep trouble. Did you mean to kill the man? That's number one. Did you mean to kill him?

Defendant also argues that Howard's swearing at him rendered defendant's confession involuntary.

In determining whether a defendant's confession is voluntarily made, this Court considers the totality of the circumstances. *State v. Corley*, 310 N.C. 40, 47, 311 S.E.2d 540, 545 (1984). In the present case evidence pertaining to the circumstances surrounding defendant's statement tends to show the following.

STATE v. McCULLERS

[341 N.C. 19 (1995)]

On 28 July 1992 the Raleigh Police Department Major Crimes Task Force was investigating the victim's murder. Pursuant to this investigation, at approximately 10:00 p.m. on that date, Detective W.A. Blackmun, Detective M. Bissette, Sergeant W. Gardner, and another uniformed officer went to defendant's residence. Blackmun and Bissette went to the door and asked to speak to defendant. Defendant told the detectives he wanted to talk outside on the porch. While talking to the law enforcement officials on the porch, defendant was asked if he would come downtown to talk, and defendant said he would. Defendant accompanied the law enforcement officials voluntarily.

Defendant was eighteen years old at the time. Defendant had completed the ninth grade and part of the tenth before terminating his schooling; at the time of his arrest, he was working towards his GED. Defendant had made average to above-average grades in school but had problems paying attention.

Once defendant arrived downtown, he was escorted into an interview room on the fourth floor of the Raleigh Police Department. The room was ten feet by ten feet and contained a table, three chairs, a trash can, an ashtray, and a one-way mirror. Defendant was not handcuffed or restrained, and the door to the room was never locked. Detectives J.W. Howard and W.T. Liles first interviewed defendant; they were dressed in suits and had no weapons. Before interviewing defendant, Howard fully and properly advised defendant of his *Miranda* rights. Defendant indicated that he understood his rights and wished to waive them; defendant then signed the *Miranda* rights form on 28 July 1992, at approximately 10:30 p.m. Defendant was alert, his speech was not slurred, and he gave no indication of being under the influence of drugs or alcohol. Defendant gave a statement to these two detectives from 10:30 p.m. until approximately 11:05 p.m. This statement was taped and then transcribed. In the statement defendant admitted hitting a man in the legs outside the Tower Shopping Center and also hitting a man in the head with a bat. During defendant's statement to Howard and Liles, Howard made the statement, noted earlier, that it would be better for defendant if he said that he did not mean to kill the man than for him to keep denying that he did it and that the police had witnesses. Howard also swore at defendant on two occasions, stating: "How in the h— did you hit Bootsy in the g—d— head, if you were hitting the man in the legs?" and "What the h— are you saying? I don't know what the h— you [are] saying." Liles testified on *voir dire* that he was present while

Howard interviewed defendant and that Howard did not make any promises or threats to defendant.

Howard and Liles then left defendant alone in the room with the door unlocked. Shortly thereafter, Detectives W.A. Blackmun and M. Bissette entered the room. Blackmun recorded the interview between defendant and Blackmun, which lasted seven minutes. During this interview, defendant specifically referred to an assault that occurred "beside Johnny's Motor Lodge." Defendant stated that he hit a man on the head with a bat; that the other people he was with then jumped on the victim to take his money; and that while defendant did not get any money from the victim, he saw the others check the victim's pockets. Defendant also told Blackmun that everybody was out for money and that at least one person took money from the victim. Blackmun testified on *voir dire* that he did not make any promises or threaten defendant in any way. At the end of his statement to Blackmun and Bissette, defendant stated that he could not say that anyone had threatened him or made him say anything he did not want to say and that he was telling the truth. Defendant did not testify during the pre-trial hearing.

The trial court made findings of fact essentially in accord with the evidence offered during the *voir dire*. The trial court specifically found that "[n]o law enforcement official made any threats or promises or created any coercive atmosphere near the defendant. No physical or verbal activity by the law enforcement officials induced the defendant to make the statements he did." The trial court concluded that "defendant freely, voluntarily, and understandingly waived his constitutional rights before making any statements to law enforcement officials" and that "[n]o promises, threats, coercion, [or] duress induced the defendant to make the statements he did."

> In a *voir dire* hearing on the admissibility of a defendant's confession, the trial court must determine whether the State has borne its burden of showing by a preponderance of the evidence that the defendant's confession was voluntary. The preponderance of the evidence test is not, however, to be applied by appellate courts in reviewing the findings of the trial court. The findings by the trial court are conclusive and binding upon appellate courts if supported by competent evidence in the record. . . . The trial court's conclusions of law, however, are fully reviewable by appellate courts.

*State v. Corley*, 310 N.C. at 52, 311 S.E.2d at 547 (citations omitted).

STATE v. McCULLERS

[341 N.C. 19 (1995)]

In the present case defendant did not except to the trial court's findings of fact. Nevertheless, based on our review of the *voir dire* evidence, we conclude the findings of the trial court are supported by competent evidence and are, hence, binding on this Court. The question then is whether the trial court, considering the totality of the circumstances, properly concluded that defendant's statements were voluntarily and freely made. Defendant relies on *State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92 (1975); *State v. Fuqua*, 269 N.C. 223, 152 S.E.2d 68 (1967); and *State v. Stevenson*, 212 N.C. 648, 194 S.E. 81 (1937).

In *Stevenson* an officer had told defendant, prior to defendant confessing: "There is no use you beginning to tell a lie to me this morning, I have already got too much evidence to convict you." *Stevenson*, 212 N.C. at 649, 194 S.E. at 81. In *Stevenson* the defendant testified that he signed the confession because he feared being lynched. *Id.* The Court stated that based on the circumstances of the confession, the confession must be deemed involuntary. *Id.* at 650, 194 S.E. at 82.

In *Fuqua* the Court ordered a new trial where an officer testified he had told the defendant: "[I]f he wanted to talk to me then I would be able to testify that he talked to me and was cooperative." *Fuqua*, 269 N.C. at 225, 152 S.E.2d at 69. No evidence in the record supported the trial court's finding that the confession was not made under hope of reward, and this Court held that a review of all the circumstances surrounding the defendant's confession impelled the conclusion that "there was aroused in him an 'emotion of hope' so as to render the confession involuntary." *Id.* at 228, 152 S.E.2d at 72.

In *Pruitt* the Court held a confession was made involuntarily after noting that an officer's statement that it would be harder on defendant if he did not cooperate certainly "would imply a suggestion of hope that things would be better for defendant if he would cooperate, *i.e.*, confess." *Pruitt*, 286 N.C. at 458, 212 S.E.2d at 102. In *Pruitt* the police had also "repeatedly told defendant that they knew that he had committed the crime and that his story had too many holes in it; that he was 'lying' and that they did not want to 'fool around.'" *Id.* In *Pruitt* the Court reached its decision that the confession was not voluntary after a review of the entire record. *Id.* at 454, 212 S.E.2d at 100.

In our view the present case is more nearly analogous to *State v. Smith*, 328 N.C. 99, 400 S.E.2d 712 (1991), where the Court held a con-

fession admissible even though a sheriff testified that he told the defendant while questioning him: "I couldn't tell him what would happen[], but it will be better for him when he came to court that he would tell—that we would tell the D.A. and the [judge] that he told the truth about it." *Id.* at 115, 400 S.E.2d at 721. The sheriff testified that he made no promises to defendant, and the trial court found that no promises or threats were made to defendant. This Court held that the sheriff's statement to defendant did not undermine the trial court's finding that the confession was given freely and voluntarily. *Id.* at 118, 400 S.E.2d at 722.

*State v. Jackson,* 308 N.C. 549, 304 S.E.2d 134 (1983), is also instructive. In *Jackson* the evidence showed that the officers had told the defendant that if he told the truth, it would come out in court and be helpful to him that he cooperated and that in the long run it would be best if he told the truth. The officers also told defendant they could not promise him anything, and the trial court found that defendant "was made no promises nor coerced nor threatened in any way." *Id.* at 578, 304 S.E.2d at 150. Upholding the voluntariness of the confession, this Court stated:

> Admonitions by officers to a suspect to tell the truth, standing alone, do not render a confession inadmissible. *State v. Dishman,* 249 N.C. 759, 107 S.E.2d 750 (1959); *State v. Thomas,* 241 N.C. 337, 85 S.E.2d 300 (1955); *State v. Thompson,* 227 N.C. 19, 40 S.E.2d 620 (1946). *See State v. Fox,* 274 N.C. 277, 163 S.E.2d 492 (1968). In *Thompson,* the defendant was told "it would be better to go on and tell us the truth than try to lie about it." We believe that the instant case falls within the language of *Thompson.* The statement attributed to [Officer] Mack, "it would certainly come out in court that he cooperated," does not provide a basis to hold that [defendant] Jackson's confession was induced by hope. Any inducement of hope must promise relief from the criminal charge to which the confession relates. *State v. Pruitt, supra,* 286 N.C. 442, 212 S.E.2d 92 (1975). Such does not appear in the record before us. We hold defendant's confession was not a product of hope or induced by fear. *State v. Rook, supra,* 304 N.C. 201, 283 S.E.2d 732 [(1981)], *cert. denied,* 455 U.S. 1038[, 72 L. Ed. 2d 155] (1982). *See State v. Simpson,* 299 N.C. 335, 261 S.E.2d 818 (1980).

*Id.* at 579, 304 S.E.2d at 151.

In the present case, as in *Smith* and *Jackson*, the trial court found, based on competent evidence, that "[n]o law enforcement official made any threats or promises or created any coercive atmosphere near defendant." Unlike the situations in *Pruitt* and *Stevenson*, the detective did not accuse defendant of lying, but rather informed defendant of the crime with which he might be charged and urged him to tell the truth and think about what would be better for him. Further, at the time Howard made the statements defendant contends were coercive, Howard had already identified for defendant, and defendant had acknowledged, the others with him the night of the murder. Earlier in the interview Howard had stated:

> What I want to talk with you about is when you and Chuck and Brian and Bootsy and another guy from Clayton by the name of Brian Barbour come to Raleigh and ya'll robbed an old man and hit him with a bat. That's the incident I'm talking about, okay?

Shortly thereafter, Howard asked defendant, "So who was together? Who was with ya'll that night?" Defendant responded, "Everybody that you named." Defendant knew at that point that the State had at least one witness.

Finally, defendant's contention that he was intimidated or coerced by Howard's profanity is not persuasive in light of defendant's own response when asked if he knew where Capital Boulevard was and if he "ever did anybody out on Capital Blvd.?" Defendant responded, "On Capital Blvd. God, how the h—— do y'all . . . I mean, I'm telling ya'll the truth."

Under the totality of the circumstances test, the isolated statements by Howard do not support defendant's contention that his statements were made involuntarily out of fear or hope on the part of defendant. We conclude, therefore, that the trial court did not err in determining that the statements were freely and voluntarily given and in denying defendant's motion to suppress.

[2]   Next, defendant argues that the trial court erred in denying defendant's motion to dismiss the first-degree murder charge because the evidence was insufficient to show that defendant committed a robbery with a dangerous weapon, the underlying felony supporting defendant's felony-murder conviction.

> On a motion to dismiss, the trial court must view all the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable infer-

STATE v. McCULLERS

[341 N.C. 19 (1995)]

ence to be drawn from it and resolving any contradiction in the evidence in its favor. "The question for the court is whether substantial evidence—direct, circumstantial, or both—supports each element of the offense charged and defendant's perpetration of that offense." *State v. Rannels*, 333 N.C. 644, 659, 430 S.E.2d 254, 262 (1993). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981). "If there is substantial evidence of each element of the offense charged, or any lesser included offenses, the trial court must deny the motion to dismiss . . . and submit [the charges] to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury." *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992).

*State v. Abraham*, 338 N.C. 315, 328, 451 S.E.2d 131, 137 (1994) (citations omitted).

"Armed robbery is the taking of personal property from the person or presence of another, by the use or threatened use of a dangerous weapon, whereby the victim's life is endangered or threatened." *State v. Rasor*, 319 N.C. 577, 587, 356 S.E.2d 328, 334 (1987); *see also* N.C.G.S. § 14-87(a) (1993). Defendant argues that the evidence does not establish that the victim had any money when he was attacked or that defendant took or attempted to take any money or property from the victim. Defendant concedes that the evidence shows that defendant's companions searched the victim's pockets after the victim was felled but argues that this act was separate from any crime defendant intended to commit. Defendant argues he was not acting in concert with his companions when they began searching the victim's pocket and that he was not part of any common plan or purpose to commit robbery with a dangerous weapon. According to defendant, he only intended to assault the victim. We are not persuaded by defendant's argument and hold that the evidence is sufficient to support a jury's finding defendant guilty of robbery with a dangerous weapon under the theory of acting in concert.

"Under the doctrine of acting in concert, if two or more persons act together in pursuit of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime

committed by any of the others in pursuit of the common plan." *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618 (1989), *judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, [502] U.S. [876], 116 L. Ed. 2d 174[, *reh'g denied*, 502 U.S. 1001, 116 L. Ed. 2d 648] (1991), *quoted in State v. Cook*, 334 N.C. 564, 433 S.E.2d 730 (1993). This is true even where "the other person does all the acts necessary to commit the crime." *State v. Jeff[e]ries*, 333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993).

*Abraham*, 338 N.C. at 328-29, 451 S.E.2d at 137.

In this case the common plan was clearly to assault and rob the victim. Defendant stated in his confession that "[t]hat's what everybody was out for, to get some money." Perry testified that her brother, William Whitley, encouraged Perry's son to go to motels and stores and beat people with bats and to "get paid" by going to motels and stores. While talking to Perry's son, Whitley described the beating of the victim. Defendant also stated that after he hit the victim on the head and the victim fell down, "everybody just jumped on him, tried to take his [the victim's] money." Defendant watched everyone search the victim's pockets. This evidence creates a reasonable inference that the group's plan or purpose was not only to attack the victim but also to rob him.

There is also evidence of the other elements of robbery with a dangerous weapon. Defendant was wielding a bat during the assault, and Brian Walker had a metal pipe. Defendant stated that Brian Walker took some money from the victim after defendant had struck the victim in the head with a bat. There was substantial evidence that the common plan of the entire group, including defendant, was to assault and rob the victim and that personal property of the victim was taken by defendant's companion by the "use or threatened use of a dangerous weapon, whereby the victim's life [was] endangered." *Rasor*, 319 N.C. at 587, 356 S.E.2d at 334. Under the theory of acting in concert, defendant, who was present at the scene and actively involved in the assault, was guilty of robbery with a dangerous weapon. Defendant's assignment of error is without merit.

[3] Finally, defendant argues that the trial court erred in denying defendant's alternative motions to continue or to provide funds for an investigator. Defendant first argues that the trial court denied his motion to continue in violation of defendant's right to due process.

Defendant made a motion to continue after the State provided defendant with a list of six possible witnesses on 30 July 1993, the Friday afternoon before the trial was to begin.

Defendant argues that defense trial counsel not having been appointed until four months after the alleged crime, the identities of these potential witnesses, other people in the vicinity of the crime on the night of the attack, were beyond the reasonable ability of trial counsel to ascertain. Defendant further argues that he was surprised immediately before trial with this *Brady* material containing evidence not within the control or knowledge of defendant. Defendant asserts that the evidence he sought time to develop could have been helpful and probative as there was a reasonable possibility that one of these potential witnesses may have been able to establish that the victim was alive and unharmed after defendant left the city, that defendant was not the perpetrator, or that none of the victim's property was taken by defendant or his coconspirators.

> Traditionally, the decision to grant or deny a continuance rests within the discretion of the trial court. However, that discretion does not extend to the point of permitting the denial of a continuance that results in a violation of a defendant's right to due process. This Court has long held that when a motion for a continuance is based on a constitutional right, the issue presented is an issue of law and the trial court's conclusions of law are fully reviewable on appeal.

*State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (citations omitted).

> [T]he constitutional guarantees of assistance of counsel and confrontation of witnesses include the right of a defendant to have a reasonable time to investigate and prepare his case, but no precise limits are fixed in this context, and what constitutes a reasonable length of time for defense preparation must be determined upon the facts of each case.

*State v. Searles*, 304 N.C. 149, 153-54, 282 S.E.2d 430, 433 (1981).

To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986). "[A] motion for a continuance should be supported by an affi-

davit showing sufficient grounds for the continuance." *State v. Kuplen*, 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986). " '[A] postponement is proper if there is a belief that *material* evidence will come to light and such belief is reasonably grounded on known facts.' " *State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (quoting *State v. Gibson*, 229 N.C. 497, 502, 50 S.E.2d 520, 524 (1948)).

In *State v. Cradle*, 281 N.C. 198, 188 S.E.2d 296, *cert. denied*, 409 U.S. 1047, 34 L. Ed. 2d 499 (1972), the defendant wished to continue the case so she could go home and elicit evidence from witnesses at home. The Court held that the trial court was correct in denying defendant's motion to continue because

> neither defendant nor her counsel revealed to the court the name of a single witness defendant allegedly had at her home which she desired to subpoena. What she [defendant] expected to prove by these witnesses must be surmised.

*Id.* at 208, 188 S.E.2d at 303. In making its decision, the Court also noted that " '[c]ontinuances should not be granted unless the reasons therefor are fully established. Hence, a motion for a continuance should be supported by an affidavit showing sufficient grounds.' " *Id.* (quoting *State v. Stepney*, 280 N.C. 306, 312, 185 S.E.2d 844, 848 (1972)); *see also Searles*, 304 N.C. at 155, 282 S.E.2d at 434 (holding that the trial court correctly denied defendant's motion to continue in order to have time to locate a potential material witness where "defendant's oral motion . . . , made on the date set for trial, was not supported by some form of detailed proof indicating sufficient grounds for further delay").

In the present case defendant was arrested on 28 July 1992; his first trial counsel was appointed on 29 July 1992. A year later on 30 July 1993, the Friday before the trial was to begin, the State provided defendant with the names of six potential witnesses. Defendant requested a continuance on 2 August 1993. The State had provided defendant with other discovery material months before trial. In support of the oral motion to continue, made the day the trial was to begin, defendant simply stated he had been given a list of "half a dozen witnesses, two of which live in Rocky Mount," and that he had spent the weekend trying to locate the witnesses but had not had the opportunity to interview anyone. Defense counsel also stated that he thought the witnesses "would be important for the defense in this case." However, defense counsel presented no details at trial indicating how these witnesses could in any way help defendant.

In his argument to the trial court, defense counsel did not indicate what information the witnesses may have had that could be exculpatory, or even who these witnesses were or how they were related to the case. While defendant argues in his brief to this Court that the witnesses at issue were other people in the vicinity of the crime that night, this fact was not disclosed to the trial court. Defendant also argues in his brief that these witnesses could have provided information that the victim was alive after defendant left town, that defendant was not involved in the beating, or that the victim had no money to steal. No such argument was presented to the trial judge in the pretrial hearing, and nothing in the record before this Court supports these arguments.

The trial court, in its written order denying a continuance, found that the defendant's "attorneys had ample time to adequate[ly] investigate and prepare for trial." The court also found that "[n]o credible evidence was presented which would support a finding that the failure to grant a two day continuance would likely result in a miscarriage of justice." We conclude that the trial court did not abuse its discretion in denying defendant's motion to continue, as there was no evidence presented to show how defendant "would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. at 130, 343 S.E.2d at 526. In this case defendant's oral motion to continue was not "supported by an affidavit showing sufficient grounds," and the need to question these witnesses was not "fully established." *Cradle*, 281 N.C. at 208, 188 S.E.2d at 303. Additionally, defendant did not set forth some form of "detailed proof indicating sufficient grounds for further delay." *Searles*, 304 N.C. at 155, 282 S.E.2d at 434. This portion of defendant's assignment of error is without merit.

[4] Next, defendant argues that the trial court erred in denying his motion for funds for an investigator, filed on 2 August 1993. Defendant notes that he must "show a particularized need for the requested [assistance]" in order to be entitled to the funds, *State v. Artis*, 316 N.C. 507, 513, 342 S.E.2d 847, 851 (1986), and defendant argues that he made the necessary showing that he had a particularized need for the services of a private investigator based on his written motion for funds to hire an investigator, which stated:

2. The district attorney is bound by law to provide to the defense information and evidence which is potentially exculpatory.

N.C.G.S. § 15A-902, *Brady v. Maryland*, 373 U.S. 83[, 10 L. Ed. 2d 215] (1963).

3. On Friday, July 30, 1993, the district attorney turned over materials containing the names of several witnesses who can likely provide exculpatory evidence in this trial. The information turned over three days before trial was in the possession of the state for a number of months prior to July 30.

4. The witnesses named in these materials are geographically disbursed, and in the case of some of them, the addresses provided are no longer accurate.

5. In the absence of a continuance defense counsel must be in court selecting a jury.

6. Defense counsel are both solo practitioners and do not have the staff to conduct investigation while counsel [are] in court.

The trial court, in denying defendant's motion, found that "[b]road statements of need and that an expert could materially assist, without showing or pointing to any beneficial evidence that might have been obtained by such an expert, fails to make the requisite showing of a specific need."

An indigent defendant is entitled to the assistance of an expert in preparation of his defense when he makes a "particularized showing that (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." *State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992). "The particularized showing demanded by our cases is a flexible one and must be determined on a case-by-case basis." *Id.* at 656-57, 417 S.E.2d at 471. "The determination of whether a defendant has made an adequate showing of particularized need lies within the trial court's discretion." *State v. Rose*, 339 N.C. 172, 187, 451 S.E.2d 211, 219 (1994), *cert. denied,* — U.S. —, 132 L. Ed. 2d 818 (1995).

In *State v. Wilson*, 311 N.C. 117, 316 S.E.2d 46 (1984), the defendant asked for funds to hire a private investigator to interview potential witnesses who might have been essential in providing him an adequate defense. The Court held that mere hope or suspicion on the part of a defendant that evidence helpful to his defense may be found is not enough to require the appointment of a private investigator and that the defendant's allegations did not amount "to a clear showing

that specific evidence was reasonably available or necessary for a proper defense." *Id.* at 125, 316 S.E.2d at 52. The Court then concluded that the trial court properly denied the defendant's request for the appointment of a private investigator at State expense based on the bare allegations made by the defendant. *Id.*

In *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986), the defendant also requested funds for a private investigator. Defense counsel argued in part that the investigator was needed to discover "[h]ard core facts . . . that may show extreme inconsistencies [in a witness' testimony at trial], or corroborating facts or circumstances that buttress the case of the Defendant." *Id.* at 467, 346 S.E.2d at 653. This Court held that the "defendant has failed to make a threshold showing of specific necessity for the assistance of an investigator." *Id.* at 468, 346 S.E.2d at 653. The Court concluded that the defendant offered only " 'undeveloped assertions that the requested assistance would be beneficial,' " *id.* at 469, 346 S.E.2d at 654 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 324 n.1, 86 L. Ed. 2d 231, 236 n.1 (1985)), and that these assertions were not enough to require that the trial court grant defendant's motion for funds for an investigator.

We conclude that, in this case, the trial court did not abuse its discretion when it denied defendant's motion for funds for a private investigator. "The focus in determining whether the trial court erred [in denying defendant's request for expert assistance] . . . must be upon what was before the trial court at the time of the motion[]." *State v. Wilson*, 322 N.C. 117, 126, 367 S.E.2d 589, 594 (1988). Defendant failed to indicate in his motion or argument to the trial court that he would have been deprived of a fair trial without the expert assistance of a private investigator or that there is a reasonable likelihood that an investigator would have materially assisted defendant in the preparation of his case. Defendant presented no specific evidence indicating how the witnesses he mentioned in his motion may have been necessary to his defense or in what manner their testimony could possibly assist defendant. He simply stated that the witnesses could "likely provide exculpatory evidence in this trial." Thus, defendant presented only broad, "undeveloped assertions that the requested assistance would be beneficial." *Caldwell*, 472 U.S. at 324 n.1, 86 L. Ed. 2d at 236 n.1. We conclude that the trial court did not abuse its discretion when it determined that "defendant failed to make the requisite showing of a specific need for funds to hire a private investigator." This assignment of error has no merit.

Having reviewed all of defendant's assignments of error, we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.