IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-358

Filed: 19 May 2020

Lenoir County, Nos. 16CRS050202, 17CRS000096-97

STATE OF NORTH CAROLINA

v.

JUSTIN LAVONE LYNCH, Defendant.

Appeal by Defendant from judgment entered 19 March 2018 by Judge Charles Henry in Lenoir County Superior Court. Heard in the Court of Appeals 18 March 2020.

> *Attorney General Joshua H. Stein by Assistant Attorney General Sherri H. Lawrence, for the State.*
>
> *Glover & Petersen, P.A., by James R. Glover, for Defendant-Appellant.*

DILLON, Judge.

Defendant Justin Lynch appeals from a judgment entered against him for first-degree murder, robbery with a dangerous weapon, and assault with a deadly weapon with the intent to kill inflicting serious injury. Defendant was sentenced to life without parole for the murder conviction and to shorter terms for the other convictions.

I. Background

This case arises out of the robbery of a bar on 22 January 2016, perpetrated by two masked individuals. The evidence at trial tended to show that Defendant was one of the masked individuals. During the robbery, Defendant shot and killed the owner of the bar, and he and his accomplice fled with the cash register. Officers tracked down Defendant and his accomplice and arrested them. Defendant was advised of his Miranda rights and signed a waiver, never asking to speak with a lawyer. Defendant was interrogated alone by two officers at the police station.

Defendant adamantly denied any involvement during much of the interrogation. However, towards the end of the recorded, three-hour interrogation, Defendant finally confessed to his involvement.

Prior to trial, Defendant moved to have his confession suppressed. His motion was denied.

At trial, the State introduced Defendant's confession and the testimonies of others involved in the robbery implicating Defendant. The jury convicted Defendant. Defendant appeals.

## II. Analysis

### A. Voluntariness of Defendant's Confession

On appeal, Defendant argues that it was error for the trial court to admit his confession. He contends that his confession was not voluntary "because it was

produced by the hope for a sentence less tha[n] life imprisonment [in]duced by the statements and actions of the officers who interrogated him."

The transcript from the interrogation tends to show that Defendant was not predisposed to confess; he repeatedly denied any involvement; he was predisposed to believe that he would receive a life sentence whether he confessed or not; the interrogators told Defendant that they had overwhelming evidence of his guilt; they told him that they believed he was lying; they told Defendant that he had a better chance of a lesser sentence if he cooperated with them; and Defendant eventually cooperated, confessing to his involvement and naming his accomplice, believing that by cooperating, he had a better chance of a reduced sentence.

1. A confession induced by hope may be involuntary, depending on the totality of the circumstances.

"It has been the law of this State from its beginning that an extrajudicial confession of guilt by an accused is admissible against him *only when it is voluntary*." *State v. Fox*, 274 N.C. 277, 292, 163 S.E.2d 492, 502 (1968) (emphasis added) (citations omitted). In an opinion penned during the first decade of our Supreme Court's existence, our original three justices each expressed the view that a confession

which was induced by some promise or hope is involuntary and, therefore, inadmissible.[1] *State v. Roberts*, 12 N.C. 259, 260 (1827) (granting a new trial).

We stress, though, that a confession motivated by some *hope* of leniency, in and of itself, does not render a confession involuntary. Indeed, hope may be part of a defendant's calculus in *voluntarily* deciding to confess.

It is when this hope develops from something said by one in authority, such as by an interrogating officer, that our Supreme Court has held that a confession *may* be deemed involuntary. But even hope so derived is not *per se* involuntary. Rather, the court "looks at the totality of the circumstances." *State v. Jackson*, 308 N.C. 549, 581, 304 S.E.2d 134,152 (1983). And where a "defendant's will [i]s not overborne [by the hope]," his confession can still be said to be "made freely and voluntarily with full knowledge of the consequences." *State v. Richardson*, 316 N.C. 594, 604, 342 S.E.2d 823, 831 (1986) (requiring the reviewing court to look at the totality of the circumstances to determine whether a confession induced, in part, by hope is voluntary).

---

[1] Our first Chief Justice John Louis Taylor, our only foreign-born Chief Justice (born in London), stated: "The true rule is, that a confession cannot be received in evidence, where the Defendant has been influenced by any threat or promise[.]" *State v. Roberts*, 12 N.C. 259, 260 (1827).

Justice John Hall stated: "In order to make the confessions of a prisoner evidence to a Jury, it should appear that he was not induced to make them from a hope of favor, or compelled by fear of injury." *Id.* at 260-61.

Justice Leonard Henderson, for whom the town of Henderson is named, stated: "Confessions are either voluntary or involuntary. They are called voluntary, when made neither under the influence of hope or fear. . . . [I]t is said, and said with truth, that confessions induced by hope . . . are, of all kinds of evidence, the least to be relied on, and are therefore entirely to be rejected." *Id.* at 261-62.

In any event, it is the role of the trial judge, and the appellate judges on review, to consider the totality of the circumstances in determining whether a confession was so induced by hope so as to render it involuntary.

2. Where there are no disputes as to what occurred during the interrogation, we review *de novo* whether Defendant's confession was voluntary.

It is the role of the trial court to resolve disputes about what was *said or done* by the defendant or the investigating officers during an interrogation. *See Richardson*, 316 N.C. at 600-01, 342 S.E.2d at 828 (1986). However, where there is no dispute or after the trial court has resolved such disputes, whether a defendant's confession was voluntary "is a question of law and is fully reviewable on appeal." *State v. Barden*, 356 N.C. 316, 339, 572 S.E.2d 108, 124 (2002) (internal quotation marks omitted) (citation omitted). That is, whether certain conduct and language by the interrogating officers "amounted to such threats or promises or influenced the defendant by hope and fear as to render [his] subsequent confession involuntary" is reviewed *de novo* on appeal, as a question of law. *Richardson*, at 601, 342 S.E.2d at 828; *see State v. Rook*, 304 N.C. 201, 216, 283 S.E.2d 732, 742 (1981) (holding that where a defendant is influenced by hope and fear the subsequent confession is involuntary); *see also State v. Andrew*, 61 N.C. 205, 206 (1867) ("What facts amount to such threats or promises as make confessions not voluntary and admissible in evidence is a question of law, and the decision of the judge in the court below can be reviewed by this court[.]").

3. <u>Our Supreme Court has instructed that, though certain statements by interrogators are inappropriate, the determination of voluntariness must be based on the totality of the circumstances.</u>

Confessions induced by hope or fear tend not to be reliably true, as there is some probability that the suspect decided to confess to something that he did not do simply because he believed it to be his best option at the time. Indeed, this was one of Justice Henderson's concerns in *Roberts*. *Roberts*, 12 N.C. at 262.

There is, however, a greater concern, a constitutional concern: no matter how truthful a confession may appear to be on its face, a defendant has the constitutional right not to have incriminating statements, involuntarily made by him, used against him. *See Bram v. United States*, 168 U.S. 532, 542, 42 L.Ed. 568, 573 (1897) ("In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by [the] [F]ifth [A]mendment[.]). Therefore, the issue is *not* how truthful Defendant's confession may otherwise appear to be. Rather, our task is to determine, based on the totality of circumstances, whether Defendant's confession was voluntary.

As the issue before us is largely a question of law, we are bound by jurisprudence from our Supreme Court in determining whether Defendant's confession was voluntary. Our Supreme Court has decided a number of cases during its 200-year history where an issue was the voluntariness of a confession. The line between voluntary and involuntary may appear blurred at times, as certain

statements by officers are sometimes held to be sufficient to render a confession involuntary, while similar statements in other cases have been held *not* sufficient. But a closer look at these cases reveals that our Supreme Court decides each case based on the totality of the circumstances.

Our Supreme Court has held that "a confession obtained as a result of an inducement of hope promising relief from the criminal charge to which the confession relates is involuntary and inadmissible." *State v. Hayes*, 314 N.C. 460, 476, 334 S.E.2d 741, 750-51 (1985). But the Court always looks at the totality of the circumstances to discern whether the confession was actually induced by the promise of a chance for leniency.

In *Hayes*, for example, our Supreme Court suggested a statement to the defendant that "it could possibly be of some help if he talked" was inappropriate. *Id.* at 476, 334 S.E.2d at 750. However, the Court concluded that since the statement was the only inappropriate one made and since the other circumstances suggested that it did not cause the defendant to confess, the confession was voluntary: "We conclude, however, that this [singular] statement by Captain Roberts could not have aroused in the defendant, a man 28 years old with experience dealing with law enforcement officials, any reasonable hope of reward if he confessed to the crimes." *Id.* at 476, 334 S.E.2d at 751.

Likewise, in *State v. Corley*, our Supreme Court held that a statement by an interrogator to the defendant "that things would go better with him if he told the truth," though inappropriate, was not enough to render the defendant's confession involuntary:

> At no time during the defendant's testimony [during *voir dire* on the motion to suppress] did he say that any statement to him by [the officer] . . . caused him to hope to gain in any way by confessing to the crimes under investigation.
>
> . . .
>
> The totality of the circumstances clearly compelled the trial court's determination that the defendant's statements were not induced by any hope or fear arising from the conduct of the officers and, therefore, were voluntary.

310 N.C. 40, 52-53, 311 S.E.2d 540, 547-48 (1984).

However, our Supreme Court has held on many occasions that a single suggestion by an interrogating officer may be enough to render a defendant's confession involuntary, suggesting that reviewing courts *should err on the side of the defendant*:

> The assertion of his innocence, in reply to the proposition that he should confess and thus make it easier for him, does not at all prove that the offer of benefit from the officer who had him in charge did not find a lodgment in his mind. If so, what could be more reasonable than that when he found himself on the way to prison in charge of the author of this hope that a confession would alleviate his condition, he should be tempted to act then upon a suggestion that he had rejected when the prospect did not seem to him so dark,

> and make a confession. It [m]ay have proceeded from this
> cause, from this hope so held out to him. If it may have
> proceeded from that cause, there is no guaranty of its truth,
> and it must be rejected.

*State v. Pruitt*, 286 N.C. 442, 457, 212 S.E.2d 92, 102 (1975) (quoting *State v. Drake*, 113 N.C. 625, 18 S.E. 166 (1893)). For instance, in *State v. Fuqua*, our Supreme Court held that merely telling the defendant "[t]hat if he wanted to talk to me then I would be able to testify that he talked to me and was cooperative[,]" was enough to render a confession involuntary as it was made "by a person in authority . . . which gave defendant a hope for lighter punishment." 269 N.C. 223, 228, 152 S.E.2d 68, 72 (1967). In considering the totality of the circumstances, the Court noted that the statement of hope was made "before the defendant made his confession." *Id.* at 228, 152 S.E.2d at 72.

In *State v. McCullers*, though, our Supreme Court held that more egregious statements by an interrogator to a defendant did *not* render his confession involuntary, based on the totality of the circumstances, essentially because they were made after the defendant admitted to being involved in the crime. 341 N.C. 19, 460 S.E.2d 163 (1995). In that case, *after* the defendant admitted to being at the location of a killing and named his accomplices, the interrogator, in trying to get the defendant to implicate himself further, had the following exchange with the defendant:

> [Officer] You are going to jail. . . . You are gonna be charged
> with murder. What's gonna be to your favor is for you to
> tell the truth and that's all we want is the truth.

[Defendant]  So you're saying either way, I'm going to jail?

. . .

[Officer]  Listen to me.  Don't you think a Judge, a jury and society will look upon you much better, if you say, I didn't mean to kill the man, I didn't know he was gonna die, than [for] you to sit there and keep denying that you done it, when I've got all these other witnesses that say you did. Which way looks the best for you?

*Id.* at 23, 460 S.E.2d at 165.  The Court held that the evidence showed that the defendant had already admitted to traveling to Raleigh with others and robbing a victim and hitting the victim with a bat *before* the officer made the above statements, The Court ultimately concluded that "[u]nder the totality of the circumstances test, the isolated statements [above] do not support defendant's contention that his statements were made involuntarily out of fear or hope[.]"  *Id.* at 28, 460 S.E.2d at 168.

Our Supreme Court has suggested that any statement tending to produce hope does not tilt the scales where the statement does not directly reference hope concerning the criminal charges that the defendant is currently facing.  *See State v. Gainey*, 355 N.C. 73, 84, 558 S.E.2d 463, 471 (2002) ("This Court has held that an improper inducement must promise relief from the criminal charge to which the confession relates, and not merely provide the defendant with a collateral advantage.").  In *Gainey*, the Court held that a statement to the defendant that "[i]f

he wanted to help himself that he could help himself by cooperating[,]" was not sufficient to render a confession involuntary in that case as the officer "never made any promises to defendant concerning the disposition of his case." *Id.* at 84, 558 S.E.2d at 471.

We note that an admonition by interrogators to "tell the truth" is typically acceptable, while an admonition to "confess guilt" tilts towards concluding a confession was involuntary. *See, e.g., State v. Dishman*, 249 N.C. 759, 763, 107 S.E.2d 750, 753 (1959) (Parker, J., concurring).

One final point, our Supreme Court has instructed that hope induced by interrogators is less egregious when the statements are made *in response to* a solicitation by the accused, as the totality of the circumstances suggest that the accused is voluntarily bargaining with his interrogators in exchange for a confession rather than interrogators trying to induce a confession from a defendant predisposed not to confess. *See State v. Smith*, 328 N.C. 99, 118, 400 S.E.2d 712, 722 (1991). Though *Smith* involved some statements by the interrogator that seem to cross the line, the Court held that the resulting confession was voluntary, as the interrogator's statements were in response to the defendant's inquiry and the defendant had "significant experience" with being interrogated:

> Defendant had significant experience with the criminal
> justice system, and it appears that the officers did little if
> anything to instill fear into him.

> This case is more like *State v. Richardson*, 316 N.C. 594, 342 S.E.2d 823.  In Richardson defendant's confession came as a result of bargaining with police officers. Thus, the promises made did not render his confession involuntary because "[p]romises or other statements indicating to an accused that he will receive some benefit if he confesses do not render his confession involuntary when made in response to a solicitation by the accused." *Id.* at 604, 342 S.E.2d at 831. In the present case, defendant testified that Sheriff Hardy asked where the "gun and stuff was at." Defendant asked why he should tell, and Sheriff Hardy responded that defendant could get the electric chair. Thus, according to defendant's own testimony, any benefits that Sheriff Hardy mentioned were in response to defendant's own inquiry.

*Id.* at 118, 400 S.E.2d at 722.

4. <u>Based on the totality of the circumstances, we conclude that Defendant's confession was involuntary, based on our close examination of our Supreme Court's jurisprudence.</u>

We have thoroughly reviewed the 42-page transcript from the interrogation of Defendant and conclude that his confession was involuntary, and therefore should have been excluded.  The transcript tends to show that the following occurred during the interrogation:

Defendant was 18 years old at the time.  A short time after the robbery and shooting, Defendant was apprehended and brought into custody.  He arrived at the police station at around 6:30 in the evening, where he was handcuffed and placed alone in a room, separated from his alleged accomplice who was also apprehended. At some point he was read his Miranda rights and did not ask for an attorney.  Over

- 12 -

six hours later, at 12:46 a.m., two interrogators entered his room, they uncuff him, and they proceeded to interrogate him. Defendant consented to the interrogation.

He confessed to stealing some items from some homes. The investigators then focused on the events in the bar where the shooting occurred and the cash register was stolen. Defendant denied any involvement.

Without any prompting from Defendant, investigators told Defendant that they already knew the truth and that Defendant needed to be honest. They accused Defendant of lying.

Without any prompting from Defendant, they suggested that Defendant's shooting of the bar owner was a mistake, to which Defendant continued to simply deny any involvement.

Without any prompting from Defendant, they told Defendant that "we know who your accomplice is that went with you" and that "multiple times [you two] actually rode by [the bar] saying you want[ed] to hit that place[.]" Defendant simply denied it: "Y'all got the wrong information cause I didn't . . . I have nothing to do with it."

Without any prompting from Defendant, investigators then appealed to Defendant's belief in God to tell the truth:

> "How would God feel knowing what you know, what I know . . . . How would you think God feels knowing what we all know happened and you're sitting there looking at me in

the face telling me that you didn't have nothing to do with it?"

Defendant, though, continued to *repeatedly* deny any involvement, saying he was at home.

In response, and without any prompting from Defendant, they told him to be honest so that they could "help" him and so that "the judge" would see him as an honest man rather than as a gang member:

> "Well, the thing that I'm thinking about is knowing what we know and you've got to understand and know some of the things we [already] know. If you choose to stay on the path that you're on right now which is just not saying anything except that you were home which we know is not true, then there is not going to be a lot of room for any kind of help. . . .
>
> The issue is, is you're going to find yourself in court and they're going to ask what did you do that says you are the truthful man that you claim to be [rather than simply a gang member]. . . .
>
> [I]f you stand in front of the judge and [deny involvement], . . . [h]e's not going to have any choice by to judge you by what he sees and what we show him. I want you to take the opportunity to let him see that you are not defined by that gang. . . . I believe that there is that good upstanding God fearing person in you[.] . . . Let that be who the judge sees. Let that [honest man in you] be who he decides what's going to happen."

Defendant, though, continued to deny involvement: "I don't know what you want out of me, man. I can't tell you nothing I don't know."

They told him that they would have the evidence to convict him anyway: "There's another person involved. We'll talk to that person. And that person will tell us. We got evidence that can lead back to you. It's just a matter of time. We send it. They test it. They tell us. You said you already got a felony. Right?" Defendant simply responded that he does have a felony in his record.

Then, without any prompting from Defendant, the interrogators suggested that if he was not honest, then he would lose a benefit before the judge:

> "Then those kind[s] of things that would benefit you for the judge to hear [i.e., his confession/remorse] will go away."

The interrogators again appealed to Defendant's belief in God and to his grandmother's belief in God to tell the truth, and told Defendant that it was up to him to get "[a]ll the benefit you can get." They appealed to his relationship with his grandmother and to God, and then stated that it was up to him "to get it." Defendant then asked them: "Want me to get what?" An interrogator answered: "All the benefit that you can get [by confessing]," and then described this benefit as being a life with a clean conscience and a right relationship with his grandmother.

But without any further inquiry by Defendant, the *other* interrogator interjected "[w]e can let the district attorney, you know, here and show that you were very, being very cooperative on everything . . . . You've got to trust us to know that

we can help you." But Defendant responded by continuing to deny any involvement in the shooting.

Then an interrogator, unprompted, said, "Don't miss this man, Please," to which Defendant responded, "Miss what? What . . . am I missing?" Defendant said that he was not going to throw his life away by confessing to something he did not do. But the interrogators responded that they "[knew] what you did [and] who all was involved. We know exactly what happened."

Defendant, though, again denied any involvement. They responded by telling him that they did not believe him. They informed Defendant that "we got multiple statements from people who said [after the incident] that you made the statement yourself several times that you did not want to kill that guy [during the robbery]." But Defendant maintained his innocence: "No, I know . . . well I didn't do that. . . . You can't have evidence." An interrogator responded, "Oh, I got evidence bo."

The interrogators described evidence that they had. And without any prompting from Defendant, an interrogator promised that if Defendant confessed, they would ask the judge to "be lenient because he was truthful."

We pause to note that the trial court made a finding that Defendant asked the interrogators if he would be shown leniency if he confessed, suggesting that they were simply responding to his question. Specifically, the trial court found that Defendant stated, "So listen, can you just break something down for me clear. No sugar coating

. . . . So what, like, all right, so explain this opportunity that I'm missing right now." However, Defendant did not make this statement until immediately *after* the interrogator made the unprompted promise that they would ask the judge to be lenient if he confessed.

After some back and forth, Defendant stated that he would be locked up for the rest of his life, no matter what he did, because of the overwhelming evidence they said they had against him. They responded (appropriately) that his life, though, would be easier. He asked, "how [would that] make it easier for my life?" They responded, "One, the judge has the opportunity to make it easier on your sentence." The interrogators stated that they could not promise what the judge would actually do. But then they described how they wanted the judge to view the Defendant as an honest, remorseful person and that they would vouch for him in court. They described that his honesty would be a "mitigating factor."

Defendant still asserted his belief that he would get life imprisonment. An interrogator responded by confessing that he could not promise anything but that "[w]hat I can promise you is that you stand a better chance of not getting life by being truthful and remorseful, all right." Defendant said that he understood.

It is at this point, about two hours into the interrogation, that Defendant offered to tell of his involvement but stated that he did not want to name his accomplice for fear of becoming a target if he was ever released. He described his

involvement. He said that he did not want to name his accomplice because his accomplice would find out, but that the investigators should be able to figure it out. However, they pressed him "to tell everything he [knew] to save his life." He proceeded to describe the robbery/shooting in great detail and how he and his accomplice disposed of evidence, but without ever naming his accomplice.

The interrogators suggested to Defendant that he needed to confirm the identity of his accomplice for them to be able to say that he was fully cooperative. He eventually named his accomplice. The interrogation ended, and Defendant wrote a letter of apology showing his remorse to the victim's family.

In sum, it is obvious that Defendant was predisposed to deny involvement, as he denied any involvement dozens of times. It is obvious that Defendant believed that he would receive a life sentence whether he confessed or not. And it is obvious that, without first being prompted by a question from Defendant, the interrogators: introduced the idea into the interrogation that they had ample evidence against Defendant, that they knew he was lying, that the judge could be influenced to show him leniency in sentencing if he confessed his guilt, and that they would be willing to testify on his behalf. Accordingly, based on the totality of the circumstances, we must conclude that Defendant's confession was involuntary. As such, the trial court erred in denying Defendant's motion to suppress.

## B. Prejudice to Defendant

The error in allowing Defendant's confession into evidence constitutes a constitutional error. We conclude that the State failed to meet its burden of showing that this constitutional error was harmless beyond a reasonable doubt, as is the State's burden on appeal. *See* N.C. Gen. Stat. § 15A-1443(b) (2016). There was sufficient evidence to convict Defendant aside from Defendant's confession. This evidence consisted of testimony from Defendant's accomplice and two others also involved in the robbery, as well as video surveillance footage showing the masked individuals perpetrating the crimes. It may be that a jury would have convicted Defendant anyway.

There was, however, no physical evidence linking Defendant to the crime, and none of the witnesses at the bar could positively identify Defendant as one of the perpetrators. Defendant's confession was quite damning to his case, essentially confessing to fatally shooting the owner of the bar during a robbery. We cannot say beyond a reasonable doubt that all twelve jurors would have voted to convict Defendant if his confession was not offered into evidence. Alternatively, even under a prejudicial error review, we conclude Defendant is entitled to a new trial. It is certainly reasonably possible that at least one juror would have had reasonable doubt of Defendant's guilt, but for the admission of his confession. Accordingly, we conclude that Defendant is entitled to a new trial.

III. Conclusion

Based on our Supreme Court's jurisprudence, we conclude that Defendant's confession in this case was not voluntarily made. We have considered the totality of the circumstances surrounding Defendant's confession and must conclude that the confession was induced by hope instilled by the interrogators. We further conclude that the admission of Defendant's extrajudicial confession constituted reversible error.

NEW TRIAL.

Judges COLLINS and BROOK concur.