STATE OF NORTH CAROLINA v. LEWIS SEARLES, JR.

No. 21

(Filed 6 October 1981)

1. **Criminal Law § 91.7 — continuance of two days to locate witness — no denial of effective assistance of counsel**

   Defendant was not denied the effective assistance of counsel by the trial court's order granting him a continuance of only two days in which to locate a witness where the motion for continuance was made the day defendant's case was called for trial; defense counsel had more than ample time to confer with defendant and any possible witnesses he might have wished to present in his behalf during the fifty-six day interim between the date of his appointment and the date the case was originally calendared for trial; although defense counsel indicated to the court that he had discovered the full name of the

potential witness, defense counsel only identified the witness to the court by a nickname and made no meaningful attempt to inform the court about the nature of his testimony; and the trial court told defense counsel that the matter would be considered further, if necessary, when the case was called for trial again in two days, but defense counsel made no request for more time when trial commenced two days later.

**2. Rape § 4— direct examination of victim—questions identifying acts**

In a prosecution for rape and first degree sexual offense in which the victim testified in detail that defendant had engaged in three separate sexual acts with her, the trial court did not err in permitting the prosecutor to identify these acts separately as he elicited evidence from the victim as to whether she had consented to each sexual act.

**3. Criminal Law § 33.1; Rape § 4— identity of assailant—name mentioned by defendant**

A rape victim's testimony that she thought her assailant had asked her whether she knew "Leon Sales," a name which had some similarity to defendant's name, was relevant to prove the identity of the victim's assailant. Furthermore, defendant waived any objection to this testimony by permitting substantially the same evidence to be thereafter admitted without renewed objections.

**4. Criminal Law § 34.7— evidence of prior crimes—competency to show motive and intent**

Testimony by a rape and burglary victim that defendant told her "that that wasn't the first time anything like [this] had happened, that he got off on white women . . . that he enjoyed degrading white women" was competent to show defendant's motive for sexually assaulting the victim and his possession of a criminal intent when he unlawfully entered her home on the night in question. In any event, defendant waived his right to complain about such testimony when he thereafter permitted similar evidence to be admitted without objection.

ON appeal as a matter of right from judgments of *Kirby, J.,* entered at the 10 November 1980 Criminal Session, BUNCOMBE Superior Court. Defendant received concurrent life sentences for first degree rape and first degree sexual offense. He was also sentenced to a consecutive term of ten to twenty years for first degree burglary. A motion to bypass the Court of Appeals on the burglary conviction was allowed on 4 May 1981.

Defendant was charged in indictments, proper in form, with first degree rape of Alice Ann Robinson and the commission of a first degree sexual offense and burglary connected therewith on 25 June 1980. Defendant entered pleas of not guilty to each charge.

The State's evidence tended to show that Alice Ann Robinson, a white female, lived with her sister and her sister's two children at the Mountain Side Apartments in Asheville, North Carolina. On 25 June 1980, Ms. Robinson was asleep on a couch in her living room when, shortly after midnight, she awoke and discovered that someone was in the room with her. She later identified this person as the defendant, Lewis Searles, Jr., a young black male of medium height with a muscular build. Ms. Robinson testified that defendant grabbed her and began to beat her about the head and face, while admonishing her to be quiet or he would kill her. She fell onto the floor. Defendant then removed her clothes and forced her, as he pressed a metal object against her throat, to perform oral sex on him. After that, he threatened her with anal sex but apparently changed his mind and inserted his penis into her vagina instead. Defendant then picked her up, put her on the couch and raped her again. During the rapes, defendant continued to hold the metal object in his hand and press it against Ms. Robinson's body. In the course of these events, defendant had also removed all of his clothes.

After these acts were completed, defendant produced a towel for them to use to clean themselves. He then sat down on the couch and began talking to her. During this conversation, Ms. Robinson asked defendant whether he had ever done something like this before. According to her testimony, he replied that it "wasn't the first time that anything like that had happened, that he got off on white women, especially white women like [her] that thought they were so much better than other people; that he enjoyed degrading white women." Ms. Robinson futher testified that defendant asked her whether she knew "someone." She stated:

"[A]t the time I thought he asked me did I know Leon Sales, and I told him no. And he said, 'I swear to God, if you're lying . . . I'll kill you.' And I said I did not know him. And I asked him why, and he said that he was in prison and everyone thought that he was the one that was going around raping all of the women that had been raped."

Subsequently, she persuaded defendant to allow her to go to the bathroom. From there, she escaped to her sister's bedroom. She woke her up and told her about the ordeal. They barricaded the bedroom door and began screaming for help. A neighbor was

aroused and called the police. In the meantime, defendant left the premises.

Officer B. L. Wardlaw arrived on the scene and interviewed Ms. Robinson about the incident. He testified that she told him about the rape and mentioned that her assailant had made some remark that "Leon Searles was doing this." Upon learning this, Officer Wardlaw inquired whether the reference could have been to *Lewis* Searles, whom he knew. Ms. Robinson responded that her attacker "could have said Lewis but she thought he said Leon." The officer further testified that she gave a description of her assailant which matched that of the defendant, Lewis Searles.

Officer Lee Warren was assigned as an investigator. He also related at trial Ms. Robinson's statements to him that her attacker had said that he had done this before, that he enjoyed "humiliating white women" and that everybody thought it was "Lewis Searles doing this, but Lewis is in prison."

With respect to the charge of first degree burglary, the State's evidence was, in brief, as follows. Phyllis Hix, Ms. Robinson's sister, testified that she locked all the doors and windows before going to sleep on 24 June 1980 and that she had not given defendant permission to enter the house, or take anything out of it, on 25 June. Officer Warren, during his investigation, discovered that a window was open. Ms. Robinson testified that her pocketbook had been in the apartment before the entry of the intruder and that it was subsequently missing after his departure.

Defendant did not testify at trial but did present evidence in his behalf through the testimony of his mother and sister. Both of these witnesses testified that defendant was at home on the night in question and that he remained there throughout the early morning hours.

Further facts, pertinent to defendant's assignments of error, shall be incorporated into the opinion below.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Christopher P. Brewer for the State.*

*Assistant Public Defender Robert L. Harrell for the defendant.*

COPELAND, Justice.

Defendant brings forward four assignments of error which he contends require a new trial of this matter. For the reasons stated below, we disagree and find that defendant received a fair trial, free from prejudicial error.

[1] First, defendant argues that the court erred in denying his motion for a continuance. Defendant made this motion on 10 November 1980, the day the case was called for trial. After hearing from both defendant and the State, Judge Kirby granted a continuance of two days, until 12 November 1980. Although defendant excepted to the short duration of this continuance, he did not thereafter raise further objections about it when trial commenced two days later. Nonetheless, defendant now says that the court's allowance of such a short continuance, in which to locate a witness and evaluate the relevance and materiality of his possible testimony, constituted a denial of his right to effective assistance of counsel, as guaranteed by the federal and state constitutions, because his counsel was thereby prevented from conferring with witnesses and preparing an adequate defense.

It is, of course, axiomatic that a motion for a continuance is ordinarily addressed to the sound discretion of the trial judge whose ruling thereon is not subject to review absent a gross abuse. *State v. Weimer,* 300 N.C. 642, 268 S.E. 2d 216 (1980); *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974). It is equally well established, however, that, when such a motion raises a constitutional issue, the trial court's action upon it involves a question of law which is fully reviewable by an examination of the particular circumstances of each case. *State v. McFadden,* 292 N.C. 609, 234 S.E. 2d 742 (1977). Denial of a motion for a continuance, regardless of its nature, is, nevertheless, grounds for a new trial only upon a showing by defendant that the denial was erroneous and that this case was prejudiced thereby. *State v. Lee,* 293 N.C. 570, 238 S.E. 2d 299 (1977); *State v. Robinson,* 283 N.C. 71, 194 S.E. 2d 811 (1973). We hold that, on this record, defendant has not performed this threshold task of demonstrating prejudicial error in Judge Kirby's order granting him a continuance of two days.

It is true that the constitutional guarantees of assistance of counsel and confrontation of witnesses include the right of a defendant to have a reasonable time to investigate and prepare

his case, but no precise limits are fixed in this context, and what constitutes a reasonable length of time for defense preparation must be determined upon the facts of each case. *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *State v. Parton,* 303 N.C. 55, 277 S.E. 2d 410 (1981); *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335, *cert. denied,* 423 U.S. 918, 96 S.Ct. 228, 46 L.Ed. 2d 367 (1975). Here, the record discloses that counsel was assigned to the case on 15 September 1980 and that he had at least one interview with defendant before his arraignment on 29 September 1980. We do not know how many, or how few, times counsel met with defendant to discuss and prepare his defense after arraignment. We do know that appointed counsel had a conference about the case with Mr. Devere Lentz, whom defendant had initially retained to represent him. As a general matter then, it is clear that defense counsel had more than ample time to confer with his client and any possible witnesses he might have wished to present in his behalf during the fifty-six day interim between the date of his appointment and the date the case was originally calendared for trial, 10 November 1980.

In addition, and more particularly, we cannot say, as a matter of law, upon this record, that the trial judge erred in not granting defendant, on the day the case was called for trial, a *longer* continuance for the purpose of locating a *potential* alibi witness, previously known only by the nickname "Puddin." Defense counsel told Judge Kirby that he had been trying to locate this "supposedly material witness" for some time but had actually talked to him, by telephone, for the first time that very morning and then only briefly. Although he indicated that he now knew who "Puddin" was and would, therefore, be able to locate him, defense counsel never identified the witness, by disclosing his full name, and he made no meaningful attempt to inform the court about the nature of his testimony. The trial judge thus had no basis for determining whether this witness's testimony would, in fact, be material.

An analogous situation existed in the case of *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296, *cert. denied,* 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed. 2d 499 (1972). In *Cradle,* defendant had also contended that her constitutional rights of confrontation and assistance of counsel had been denied by the trial court's failure to grant her motion for a continuance. Apparently, defendant asked for the ex-

tension on the day of trial in order to go home and elicit evidence from various witnesses there. Justice Huskins, speaking for the Court, overruled defendant's contention and said:

> "[N]either defendant nor her counsel revealed to the court the name of a single witness defendant allegedly had at her home which she desired to subpoena. What she expected to prove by these witnesses must be surmised. If she went home to get the list of witnesses, the record fails to show it. The oral motion for continuance is not supported by affidavit or other proof. In fact, the record suggests only a natural reluctance to go to trial and affords little basis to conclude that absent witnesses, if they existed, would ever be available. We are left with the thought that defense counsel suffered more from lack of a defense than from lack of time. 'Continuances should not be granted unless the reasons therefor are fully established. Hence, a motion for a continuance should be supported by an affidavit showing sufficient grounds. *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948).' *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972)." 281 N.C. at 208, 188 S.E. 2d at 303.

For similar reasons, we believe that, in the instant case, the trial court did not err in refusing to grant a longer continuance when defendant's oral motion therefor, made on the date set for trial, was not supported by some form of detailed proof indicating sufficient grounds for further delay.

Defendant was arrested on 26 June 1980. His counsel was appointed on 15 September 1980. If "Puddin" possessed information vital to his defense, surely defendant had some idea what "Puddin" might testify about long before the case was called for trial on 10 November 1980. Thus, if the proof were indeed in this "Puddin," defendant should have particularized, to a greater degree, by means of an affidavit or otherwise, the probable content, and importance, of his testimony in support of the motion for a continuance. No additional information has been included in the record or brief for our review which would support a conclusion by us that a longer continuance was constitutionally required to afford defendant a reasonable opportunity to locate a *material* witness. We also note that there is no evidence that defendant even tried, during his two-day extension, to utilize what information he did

possess about "Puddin" to have a subpoena issued to secure his trial attendance.

Finally, we would emphasize that the judge told defense counsel that the matter could be considered further, if necessary, when the case was called for trial again in two days. Judge Kirby plainly said: "[I]f some new problem develops in the interim, you can bring it to my attention." Defendant did not mention the "problem" again or make another request for more time. Obviously, if defendant had nothing to complain of when trial actually began, he certainly has no greater cause to complain now on appeal.

Viewing all of these circumstances as a whole, we are compelled to conclude that the court did not abuse its discretion in granting defendant only two extra days to prepare for trial and that defendant has failed to establish a violation of his constitutional rights in this regard. The assignment of error must be overruled.

[2] By his second assignment of error, defendant argues that the trial court committed prejudicial error in permitting the prosecutor to restate and repeat the answers of the prosecutrix as a preface to further questions. The line of questioning, to which defendant excepted, was in pertinent part, as follows:

"The first sexual act that was performed, was that done of your own free will and choice?

No, it was not.

. . . .

When that person placed his penis in your vaginal area, was that done of your own free will and choice?

No, it was not.

. . . .

Now, this third time, was that done of your own free will and choice?

No."

When viewed in its proper context, we fail to see how this questioning could be deemed objectionable.

The prosecutrix had previously testified in detail that defendant had engaged in three separate sexual acts with her. In his subsequent examination of her, *supra*, the prosecutor was merely attempting to clarify whether the acts were performed with her consent. We believe it was entirely proper for the prosecutor to identify these acts separately as he elicited evidence from the witness about the presence or absence of her consent to *each* sexual deed. Moreover, we have long held that the scope and manner of examination of witnesses are matters which are ordinarily governed by the trial judge who may take appropriate measures to restrict improper questioning by counsel. *See generally* 1 Stansbury's North Carolina Evidence § 25 (Brandis rev. 1973). In sum, we hold that the trial court did not err in allowing the prosecutor to pursue the line of questioning challenged by defendant. Defendant's contentions to the contrary are without merit, and this assignment is overruled.

[3]  Next, defendant maintains that the court erred in admitting speculative testimony about "Leon Sales" over his objection. Specifically, defendant objected to the victim's testimony that she thought defendant had asked her whether she knew Leon Sales. First, we find that this evidence was sufficiently relevant to be properly admitted in this case since it had a logical tendency to prove a fact in issue, to wit, the identity of the victim's assailant. 1 Stansbury's North Carolina Evidence § 77 (Brandis rev. 1973). Second, we hold that this evidence did not constitute an impermissible opinion merely because the victim said "she *thought*" defendant mentioned the name "Leon Sales." *See State v. Joyner*, 301 N.C. 18, 23-24, 269 S.E. 2d 125, 129-30 (1980); *State v. Henderson*, 285 N.C. 1, 15, 203 S.E. 2d 10, 20 (1974), *death sentence vacated*, 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976). There is some similarity between the name "Leon Sales" and the name of the defendant, Lewis Searles. Understandably, the victim might have misinterpreted the name mentioned to her, especially since she must have been in an excited and frightened state after being forcibly subjected to unseemly acts by an intruder in the middle of the night. Clearly then, it was within the jury's prerogative to weigh this evidence and determine its worth. Third, and perhaps most importantly, defendant plainly waived any objection to this testimony by permitting substantially the same evidence to be thereafter admitted, through the testimony

of the two officers, without renewed objections. *State v. Herndon,* 292 N.C. 424, 233 S.E. 2d 557 (1977); 1 Stansbury, *supra,* § 30. The assignment of error lacks merit and cannot be sustained.

[4] By his fourth assignment of error, defendant finally contends that the court committed reversible error by admitting evidence concerning his prior criminal activities. It is well-settled that evidence of a defendant's past criminal activities is generally inadmissible where such evidence is not related to the offense for which defendant is being tried, and its only bearing upon the case is that it discloses the defendant's bad character and suggests his propensity for committing a particular type of offense. *State v. Freeman,* 303 N.C. 299, 278 S.E. 2d 207 (1981); *State v. McQueen,* 295 N.C. 96, 244 S.E. 2d 414 (1978). There are, however, well-delineated exceptions to this rule, and we find that at least two of those exceptions apply in the instant case. *See State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury's North Carolina Evidence § 92 (Brandis rev. 1973).

In pertinent part, defendant excepted to the following portion of the victim's testimony wherein she stated that: "He told me that that wasn't the first time anything like [this] had happened, that he got off on white women . . . that he enjoyed degrading white women." According to Ms. Robinson's testimony, defendant made these statements after he had broken into her home and committed several sexual assaults. On its face, this evidence was relevant to show both defendant's motive for sexually assaulting the prosecutrix, *i.e.,* his desire to humilitate white women,[1] and his possession of a criminal intent when he unlawfully entered her home that night. *See State v. Jones,* 299 N.C. 298, 306-07, 261 S.E. 2d 860, 866 (1980); 1 Stansbury's North Carolina Evidence § 92, at 294-97. Thus it was not error to admit the challenged testimony. In any event, defendant again waived his right to complain about the introduction of the victim's testimony in this regard because he thereafter permitted similar evidence without objection to be admitted through the testimony of Officer Warren. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976). This assignment is also overruled.

1. Defendant's statements concerning this passion may also have been relevant to show the existence of a plan or design, on his part, to rape white women indiscriminately. *See State v. Taylor,* 301 N.C. 164, 270 S.E. 2d 409 (1980).

Defendant has abandoned his remaining assignment of error concerning the propriety of the State's intent to question him about his juvenile record if he elected to testify.

A full and careful review of this entire record and defendant's assignments of error discloses no error or prejudice requiring a new trial.

No error.