ZACHARY
 
 ,
 
 Judge
 
 .
 

 Pierre Je Bron Moore (defendant) appeals from the judgment entered upon his convictions of fleeing to elude arrest, resisting an officer, driving without a driver's license, failing to heed a law enforcement officer's blue light and siren, speeding, and reckless driving. On appeal, defendant argues that the trial court erred by denying his motion for a continuance, by allowing the State to introduce into evidence a copy of a convenience store surveillance video, and by denying his motion to suppress statements made by defendant. We conclude that the trial court did not err by denying defendant's motion for a continuance or his motion to suppress. We further conclude that the trial court erred by admitting the video, but that its admission was not prejudicial.
 

 I. Factual and Procedural Background
 

 On 6 July 2015, the Grand Jury of Orange County returned indictments charging defendant with the felony of fleeing to elude arrest and with the related misdemeanors of resisting an officer, reckless driving to endanger, driving without a license, speeding, and failing to heed a law enforcement officer's blue light and siren. Mr. George Doyle was initially appointed to represent defendant, but was permitted to withdraw on 9 March 2016, at which time defendant's trial counsel, Ms. Kellie Mannette, was appointed to represent him. The charges against defendant came on for trial before a jury at the 18 April 2016 criminal session of Superior Court for Orange County, the Honorable R. Allen Baddour, Jr. presiding. Defendant did not testify or present evidence at trial. The
 
 *737
 
 State's evidence tended to show, in relevant part, the following.
 

 During the early morning hours of 21 May 2015, Carrboro Police Officer David Deshaies was on patrol and was driving on Jones Ferry Road, in Carrboro, North Carolina. As Officer Deshaies drove past a Kangaroo gas station and convenience store, he noticed a man getting out of the driver's side of a silver Nissan Altima. A month earlier, Officer Deshaies had attempted to stop a similar car for speeding, but the car fled. At that time, Officer Deshaies had noted that the Altima had a 30 day temporary tag, but the officer was unable to identify the driver and no one was charged as a result of that incident. When Officer Deshaies saw a similar silver Nissan Altima on 21 May 2015, he checked the license tag number on his computer and learned that the car, which was owned by someone other than defendant, had been issued a license plate about ten days earlier. Officer Deshaies suspected that it was the same vehicle that he had tried to stop a month earlier.
 

 Officer Deshaies pulled into the Kangaroo parking lot and observed defendant getting out of the driver's side of the Altima. Officer Deshaies recognized defendant from other encounters during the previous two years, and noticed that defendant was wearing a white cloth on his head. When Officer Deshaies saw defendant and another man enter the convenience store, he contacted other officers, and they agreed to watch the vehicle when it left the store and to stop the car if the driver violated any traffic laws. Officer Deshaies then drove a short distance from the store, and as a result he did not see who was driving when the car left the store's parking lot.
 

 After the Altima left the parking lot, Officer Deshaies observed that it was exceeding the legal speed limit and contacted the law enforcement center to inform the dispatch officer that he was going to stop the Nissan. When Officer Deshaies activated his blue light and siren, the car accelerated rapidly away from him. Officer Deshaies followed the car for several miles, during which time he observed it run a red light and accelerate to speeds of over 110 miles per hour. Officer Deshaies chased the car for several minutes before his supervisor directed him to discontinue the attempt to stop the vehicle. Officer Deshaies then returned to the Kangaroo gas station and convenience store where he had first noticed the car. Officer Deshaies described defendant's appearance to the store's clerk, who told the officer that he knew a person who fit the description, and that he would recognize the person if he saw him again.
 

 On 22 May 2015, Officer Deshaies returned to the Kangaroo store and asked the manager if he could review the store's video surveillance footage from the night before. Officer Deshaies was permitted to view the video footage. However, the manager of the store told Officer Deshaies that the ownership of the Kangaroo store was in the process of being transferred to a different company and that, as a result of corporate policies involved in the transfer of ownership, the manager of the Kangaroo store lacked the authority to make a copy of the video. Officer Deshaies then used the video camera in his cell phone to copy the video, and downloaded the video from his cell phone to a computer to make a digital copy. Officer Deshaies testified that the video was an accurate representation of the video that he reviewed at the store.
 

 The trial court allowed the copy of the surveillance video to be played for the jury, over defendant's objection. The video depicts footage of the convenience store premises taken by four different cameras recording views of the parking lot and the interior of the store. The footage includes images of a man with a white cloth on his head getting out of the driver's side of a car. Officer Deshaies identified this man as defendant. Officer Deshaies testified that he had personally observed defendant get out of the car but that he had moved his patrol vehicle out of view of the store before defendant and the other man got back into the car and drove away. The video also shows defendant getting into the driver's side of the car before it left the parking lot.
 

 The clerk testified that on 21 May 2015 he was employed as a clerk at the Kangaroo gas station and convenience store on Jones Ferry Road, in Carrboro. Defendant had been a "regular customer" at the store and at around 1:00 a.m. on 21 May 2015, defendant
 
 *738
 
 and another man made a brief visit to the store. The clerk identified defendant in court and on the copy of the surveillance video.
 

 Carrboro Police Officer Russell Suitt testified that he and defendant had attended high school together. Officer Suitt was not involved in the car chase on 21 May 2015, but the next day he learned that there were outstanding warrants for defendant's arrest. That morning, Officer Suitt saw defendant walking on Homestead Road in Chapel Hill. Officer Suitt stopped defendant and informed him that there were warrants for his arrest. Defendant was arrested and placed in Officer Suitt's patrol vehicle without incident. As Officer Suitt was transporting defendant to the law enforcement center, another officer spoke to Officer Suitt over the police radio in the car, and asked Officer Suitt if he had information about the location of the vehicle that was involved in the incident the night before. Defendant spoke up from the back seat of the patrol vehicle and said that the car was in a secret location. Defendant also told Officer Suitt that he had sped away from the law enforcement officers the night before because he feared being charged with impaired driving.
 

 On 20 April 2016, the jury returned verdicts finding defendant guilty of the charged offenses. The trial court arrested judgment on the charges of speeding and reckless driving, and consolidated the remaining charges for sentencing. The court sentenced defendant to a term of eight to nineteen months' imprisonment, to be served at the expiration of another sentence that defendant was then serving for an unrelated charge. Defendant noted a timely appeal to this Court.
 

 II. Denial of Motion for Continuance
 

 A. Legal Principles
 

 On appeal, defendant argues that the denial of his motion to continue the trial of this case deprived him of his constitutional right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 23 of the North Carolina Constitution. The standard of review of a trial court's ruling on a continuance motion is well-established:
 

 It is, of course, axiomatic that a motion for a continuance is ordinarily addressed to the sound discretion of the trial judge whose ruling thereon is not subject to review absent a gross abuse. It is equally well established, however, that, when such a motion raises a constitutional issue, the trial court's action upon it involves a question of law which is fully reviewable by an examination of the particular circumstances of each case. Denial of a motion for a continuance, regardless of its nature, is, nevertheless, grounds for a new trial only upon a showing by defendant that the denial was erroneous and that [his] case was prejudiced thereby.
 

 State v. Searles,
 

 304 N.C. 149
 
 , 153,
 
 282 S.E.2d 430
 
 , 433 (1981) (citations omitted).
 

 N.C. Gen. Stat. § 15A-952(g) (2015) addresses a trial court's determination of whether to allow a continuance and provides in relevant part that "the judge shall consider at least the following factors in determining whether to grant a continuance:"
 

 (1) Whether the failure to grant a continuance would be likely to result in a miscarriage of justice; [and]
 

 (2) Whether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that more time is needed for adequate preparation[.]
 

 The refusal to grant a continuance may, in certain factual circumstances, violate a defendant's constitutional rights. "The defendant's rights to the assistance of counsel and to confront witnesses are guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by sections 19 and 23 of Article I of the Constitution of North Carolina. Implicit in these constitutional provisions is the requirement that an accused have a reasonable time to investigate, prepare and present his defense."
 
 State v. Tunstall,
 

 334 N.C. 320
 
 , 328,
 
 432 S.E.2d 331
 
 , 336 (1993) (internal quotation omitted).
 

 "[T]he constitutional guarantees of assistance of counsel and confrontation of witnesses include the right of a defendant to have a reasonable time to investigate and prepare his case, but no precise limits are fixed in this context, and what constitutes a
 
 *739
 
 reasonable length of time for defense preparation must be determined upon the facts of each case."
 
 Searles,
 

 304 N.C. at 153-54
 
 ,
 
 282 S.E.2d at 433
 
 (citation omitted). The Supreme Court of North Carolina has explained:
 

 To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." "[A] motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance." "[A] postponement is proper if there is a belief that
 
 material
 
 evidence will come to light and such belief is reasonably grounded on known facts." ... Continuances should not be granted unless the reasons therefor are fully established.
 

 State v. McCullers,
 

 341 N.C. 19
 
 , 31-32,
 
 460 S.E.2d 163
 
 , 170 (1995) (quoting
 
 State v. Covington,
 

 317 N.C. 127
 
 , 130,
 
 343 S.E.2d 524
 
 , 526 (1986),
 
 State v. Kuplen,
 

 316 N.C. 387
 
 , 403,
 
 343 S.E.2d 793
 
 , 802 (1986), and
 
 State v. Tolley,
 

 290 N.C. 349
 
 , 357,
 
 226 S.E.2d 353
 
 , 362 (1976)) (emphasis in original).
 

 B. Discussion
 

 Following defendant's arrest on 22 May 2015, Mr. George Doyle was appointed to represent defendant on the charges that are the subject of this appeal. Defendant was later charged with first-degree murder in an unrelated case, and Ms. Kellie Mannette was appointed to represent him on that charge. On 9 March 2016, defendant appeared in superior court before the Honorable James E. Hardin, Jr., judge presiding, who continued the homicide case until September 2016. Mr. Doyle was present at the hearing and moved that the trial court allow him to withdraw as defendant's counsel on the charges in the present case and appoint Ms. Mannette as counsel on these charges, in addition to the homicide charge on which she already represented defendant. The prosecutor informed the court that the instant charges were scheduled for trial on 18 April 2016, and the parties engaged in the following discussion regarding Ms. Mannette's representation of defendant:
 

 MR. DOYLE: ... I would move to withdraw and ask that you appoint Ms. Mannette to those files, as appropriate.
 

 MS. MANNETTE: ... Your Honor, ... just for the record, I've been speaking to Mr. Doyle about the posture of these cases. And my understanding is that they were heading towards a resolution on those cases. I will let the Court know that, if they are not able to come to a non-trial resolution, I certainly will not be prepared in a month to try those cases. I do want that on the record. I don't know that that's going to be an issue here, but I did want to put that on the record. I'll leave it in Your Honor's discretion, whether or not to grant this motion or we can continue to work together but on the separate cases.
 

 . . .
 

 THE COURT: - [to the prosecutor] [D]o you want to be heard?
 

 PROSECUTOR: My concern is - I mean, and it's really - I don't know how much standing the State has in regards to this - is that they are set for trial. If they were in an administrative posture, I would - I wouldn't voice any concern, essentially. But given that they're in trial posture, I don't know if we come April 18th and the State's ready to proceed and Ms. Mannette's not, now -
 

 THE COURT: It's going to get continued. That's the bottom line.
 

 PROSECUTOR: Right, right. So once again, I'll leave it in Your Honor's discretion....
 

 When the case was called for trial on 18 April 2016, defense counsel orally moved for a continuance; however, the record does not contain a written motion or an affidavit supporting defendant's request for a continuance. Defendant's counsel told the trial court that she had agreed to represent defendant "with the understanding" that if the parties could not reach a non-trial disposition, she "would not be prepared to try the case[.]" Defense counsel explained that she had hoped to resolve the charges without a trial, but had learned that morning that defendant would not accept the State's plea offer. Defense counsel acknowledged that she had received discovery a month earlier, on the day
 
 *740
 
 she was appointed. Counsel stated that she had not interviewed a witness or conducted the legal research necessary to support her pretrial motions. The trial court denied the motion for continuance.
 

 As discussed above, in order to establish that the denial of a continuance motion was an error of constitutional magnitude, a defendant must show both that the trial court erred by denying his motion and also that this error resulted in prejudice to the defendant. On appeal, defendant argues that the trial court's denial of his continuance motion violated his rights under the United States and North Carolina Constitutions to the effective assistance of counsel and to adequate time within which to prepare a defense. We have carefully considered defendant's arguments and conclude that they lack merit.
 

 Defendant first contends that the trial court erred by denying his continuance motion on the grounds that a comment made by Judge Hardin during the 9 March 2016 hearing constituted a "ruling" on defendant's right to a continuance, which the trial court lacked the authority to overrule. Defendant's argument is based on the following excerpt from the 9 March 2016 hearing:
 

 PROSECUTOR: ... [G]iven that they're in trial posture, I don't know if we come April 18th and the State's ready to proceed and Ms. Mannette's not, now -
 

 THE COURT: It's going to get continued. That's the bottom line.
 

 "It is well established that one superior court judge may not ordinarily modify, overrule, or change the judgment or order of another superior court judge previously entered in the same case."
 
 In re Royster,
 

 361 N.C. 560
 
 , 563,
 
 648 S.E.2d 837
 
 , 840 (2007) (citation omitted). In this case, the trial court's remark was clearly not a "judgment or order." However, on appeal, defendant characterizes this statement as a "ruling" that could not be overruled by another superior court judge. "Unfortunately for [defendant, he] failed to obtain a written ruling[.]... [A]n order rendered in open court is not enforceable until it is entered, i.e., until it is reduced to writing, signed by the judge, and filed with the clerk of court."
 
 In re Goddard & Peterson, PLLC,
 
 ___ N.C. App. ___,
 
 789 S.E.2d 835
 
 , 840 (2016) (internal quotation omitted). Defendant cites no authority holding that an oral statement by the judge, which is not reduced to writing or entered as an order or judgment, constitutes a "judgment or order" that may not be overruled by another judge. We conclude that this argument lacks merit.
 

 Defendant also contends that he established before the trial court his need for additional time to prepare a defense. At the pretrial hearing, defense counsel stated that there was a "lay witness" whom she had not interviewed, a suppression motion for which she had not conducted the necessary research, and other unspecified "motions in limine that need to be filed and argued." Defense counsel did not identify the witness or articulate any material factual issue upon which this witness might testify.
 

 Nor did defendant's counsel proffer an explanation, other than her reliance upon Judge Hardin's comment at the earlier hearing, for her failure to interview the witness, to conduct the necessary research, or to file a properly supported written motion for continuance. For example, defense counsel did not state that she had experienced a personal emergency, was involved in a jury trial, or had been required to travel during the month between her appointment and the trial of these charges.
 

 In addition, as discussed above, N.C. Gen. Stat. § 15A-952(g)(2) directs a trial court to consider, in ruling on a motion for continuance, "[w]hether the case taken as a whole is so unusual and so complex ... that more time is needed for adequate preparation[.]" In this case, defendant did not argue at the pretrial hearing that the trial of these charges was unusual or complex. The charges lodged against defendant all arose from a single incident of high speed driving and the only factual issue that was seriously contested at trial was the identity of the driver. We conclude that defendant failed to establish at the pretrial hearing that the denial of his continuance motion would violate his right to due process or to the effective assistance of counsel.
 

 Moreover, even assuming,
 
 arguendo,
 
 that it was error to deny defendant's motion to continue, defendant has failed to show prejudice on appeal. In his appellate brief,
 
 *741
 
 defendant does not identify specific factual issues that might have been resolved differently if his counsel had conducted further investigation or interviewed witnesses. Defendant argues that his counsel was ineffective at trial, based upon counsel's failure to conduct legal research prior to trial in support of his suppression motion. The premise of this contention is that, had defendant provided the trial court with case law to support his position, the court would then have granted his suppression motion. This argument has two flaws. First, "[w]e are cognizant of the rule that in a bench trial, the trial judge will be presumed to know the law and will disregard irrelevant or inadmissible evidence."
 
 Scott v. Scott,
 

 106 N.C. App. 606
 
 , 613,
 
 417 S.E.2d 818
 
 , 823 (1992),
 
 aff'd
 

 336 N.C. 284
 
 ,
 
 442 S.E.2d 493
 
 (1994). We presume that the trial court was acquainted with the relevant jurisprudence governing the issues raised by defendant's suppression motion. Secondly, on appeal defendant has not identified any specific cases or legal theories that, if they had been proffered to the trial court, might have altered the court's ruling on his suppression motion. Defendant also asserts that prejudice should be presumed, on the grounds that there was only a remote likelihood that even an experienced trial lawyer could prepare to try these charges in a month. However, defendant fails to identify any unusual complexities that might support this contention. We conclude that defendant has failed to show that the trial court violated defendant's constitutional rights in its denial of defendant's continuance motion.
 

 III. Admission of Video
 

 N.C. Gen. Stat. § 8-97
 
 (2015) provides that:
 

 Any party may introduce a photograph, video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.
 

 N.C. Gen. Stat. § 8-97
 
 provides that a photograph may be introduced for either illustrative or substantive purposes. "Rule 901 of our Rules of Evidence requires authentication or identification `by evidence sufficient to support a finding that the matter in question is what its proponent claims.'"
 
 State v. Murray,
 

 229 N.C. App. 285
 
 , 288,
 
 746 S.E.2d 452
 
 , 455 (2013) (citing N.C. Gen. Stat. § 8C-1, Rule 901).
 

 "Video images may be introduced into evidence for illustrative purposes after a proper foundation is laid.
 
 N.C. Gen. Stat. § 8-97
 
 (2015). The proponent for admission of a video lays this foundation with `testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes).'"
 
 State v. Fleming,
 
 ___ N.C. App. ___, ___,
 
 786 S.E.2d 760
 
 , 764-65 (2016) (quoting
 
 State v. Cannon,
 

 92 N.C. App. 246
 
 , 254,
 
 374 S.E.2d 604
 
 , 608-09 (1988),
 
 rev'd on other grounds,
 

 326 N.C. 37
 
 ,
 
 387 S.E.2d 450
 
 (1990)).
 

 In
 
 State v. Snead,
 

 368 N.C. 811
 
 ,
 
 783 S.E.2d 733
 
 (2016), our Supreme Court addressed the requirements for introduction of a video as substantive evidence:
 

 Rule 901(a) requires that evidence be authenticated by showing "that the matter in question is what its proponent claims." N.C.G.S. § 8C-1, Rule 901(a) (2015)..... Recordings such as a tape from an automatic surveillance camera can be authenticated as the accurate product of an automated process under Rule 901(b)(9).... Evidence that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process is sufficient to authenticate the video and lay a proper foundation for its admission as substantive evidence.
 

 Snead,
 

 368 N.C. at 814
 
 ,
 
 783 S.E.2d at 736
 
 (internal quotation omitted).
 
 Snead
 
 held that the testimony offered at trial was sufficient to authenticate the video:
 

 ... [The witness's] testimony was sufficient to authenticate the video under Rule 901. [The witness] established that the recording process was reliable by testifying that he was familiar with how Belk's video surveillance system worked, that the recording equipment was "industry standard," that the equipment was "in working order" on 1 February 2013, and that the videos produced by the surveillance system
 
 *742
 
 contain safeguards to prevent tampering. Moreover, [the witness] established that the video introduced at trial was the same video produced by the recording process by stating that the State's exhibit at trial contained exactly the same video that he saw on the digital video recorder.... [The witness's] testimony, therefore, satisfied Rule 901, and the trial court did not err in admitting the video into evidence.
 

 Snead,
 
 at 815-16,
 
 783 S.E.2d at 737
 
 .
 

 In the present case, the evidence concerning the admissibility of the video consisted of the following. Officer Deshaies testified that the day after the incident giving rise to these charges, he asked the manager of the Kangaroo convenience store for a copy of the surveillance video made by cameras at the store. The manager allowed Officer Deshaies to review the video, but was unable to copy it. Officer Deshaies used the video camera function on his cell phone to make a copy of the surveillance footage. At trial he testified that the cell phone video accurately showed the contents of the video that he had seen at the store. The store clerk also reviewed the video, but was not asked any questions about the creation of the original video or whether it accurately depicted the events that he observed on 21 May 2015.
 

 A careful review of the transcript in this case reveals that no testimony was elicited at trial concerning the type of recording equipment used to make the video, its condition on 21 May 2015, or its general reliability. No witness was asked whether the video accurately depicted events that he had observed, and no testimony was offered on the subject. We conclude that the State failed to offer a proper foundation for introduction of the video as either illustrative or substantive evidence.
 

 On appeal, the State contends that the clerk "testified that the events contained on the video copy made by Officer Deshaies were an accurate portrayal of what he had seen on the original videotape and had witnessed within the store." This assertion is inaccurate. The clerk testified that defendant was shown on the video, but was not asked whether the video accurately depicted events he observed on 21 May 2015, and did not volunteer testimony of this nature. We hold that the trial court erred by admitting the video into evidence.
 

 We next consider whether the introduction of the video was prejudicial. Defendant did not object to the admission of the video on constitutional grounds. Regarding prejudice from errors that do not arise under the state or federal constitution, N.C. Gen. Stat. § 15A-1443(a) states that:
 

 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
 

 In this case, the primary issue for the jury to resolve was whether the State had shown beyond a reasonable doubt that defendant was the driver of the car that sped away from Officer Deshaies on 21 May 2015. In its appellate brief, the State argues that the video was admissible and does not address the issue of prejudice. Defendant argues that, absent the admission of the video there is a reasonable possibility that the jury would not have convicted him. We have considered the admission of the video in the context of the other evidence against defendant, and conclude that it was not prejudicial.
 

 We summarize the trial evidence pertaining to defendant's identity as the driver as follows: Officer Deshaies testified that he saw defendant getting out of the car on the driver's side. The jury might reasonably infer that the person who drove the car into the store's parking lot would also drive when the two men left the store. In addition, as discussed in detail below, the State offered evidence that at the time of his arrest defendant told the arresting officer "that the only reason he ran from officers the night of 5/21/2015 was because he had been drinking and did not want to deal with the driving while impaired charges." This statement was a direct admission of the fact that he was driving the car the night before, given that a passenger in the car would not be charged with impaired driving. On the other hand, defendant directs our attention to the facts
 
 *743
 
 that defendant did not own the car, and that the jury asked to review the video during its deliberations.
 

 We have evaluated the degree to which the admission of the video may have played a role in the jury's decision to convict defendant, particularly given that defendant essentially confessed to being the driver of the car, and conclude that there is no reasonable possibility that the jury would have failed to convict defendant absent the video evidence.
 

 IV. Denial of Suppression Motion
 

 Prior to trial, defendant moved to suppress the statements that he made to Officer Suitts while the officer was transporting him to the law enforcement center. The trial court conducted a hearing on defendant's suppression motion on the day that the trial began and denied defendant's motion. On appeal, defendant argues that his statements were made in response to police interrogation or its functional equivalent, in violation of his right under the Fifth Amendment to the United States Constitution to avoid self-incrimination. We disagree.
 

 In
 
 Miranda v. Arizona,
 

 384 U.S. 436
 
 , 444,
 
 86 S.Ct. 1602
 
 , 1612,
 
 16 L.Ed.2d 694
 
 , 707 (1966), the United States Supreme Court held that:
 

 [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.... Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
 

 "The rule of Miranda requiring that suspects be informed of their constitutional rights before being questioned by the police only applies to custodial interrogation."
 
 State v. Brooks,
 

 337 N.C. 132
 
 , 143,
 
 446 S.E.2d 579
 
 , 586 (1994).
 
 Miranda
 
 also held, as relevant to the present case, that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."
 
 Miranda,
 

 384 U.S. at 478
 
 ,
 
 86 S.Ct. at 1629
 
 ,
 
 16 L.Ed.2d at 726
 
 .
 

 In the present case, there is no dispute that when defendant made inculpatory statements to Officer Suitt he was in custody and had not been apprised of his
 
 Miranda
 
 rights. Thus, the dispositive issue is whether defendant was subjected to interrogation. "The Supreme Court has defined the term `interrogation' as follows: `Any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"
 
 State v. Brewington,
 

 352 N.C. 489
 
 , 503,
 
 532 S.E.2d 496
 
 , 504 (2000) (quoting
 
 Rhode Island v. Innis,
 

 446 U.S. 291
 
 , 301,
 
 100 S.Ct. 1682
 
 , 1690,
 
 64 L.Ed.2d 297
 
 , 308 (1980)).
 

 Defendant made inculpatory statements after being arrested and while being transported to the law enforcement center. These statements were made in response to questions from Officer Suitt's supervising officer over the police radio. At the hearing on defendant's suppression motion, Officer Suitt testified as follows:
 

 PROSECUTOR: Okay. And what happened next [after defendant was secured in the patrol vehicle]?
 

 OFFICER SUITT: ... [W]e were en route to the police department and Mr. Moore heard - my lieutenant was asking about the vehicle, maybe see if we could locate the vehicle. He asked if Mr. Moore had said anything about where the vehicle was located. Well, obviously the speaker in my patrol car, anybody can hear that's inside the car. Mr. Moore stated that we wouldn't find the vehicle, it was possibly in a secret spot, as stated in - in the report.
 

 PROSECUTOR: Okay. And to be clear, was that in response to any question that was being asked of him?
 

 OFFICER SUITTS: It was not. I did not ask him any questions. I believe it would be in response to my supervisor, lieutenant, asking the question over the radio to me "Did he say anything about where the car was located?" And his response was in response to that.
 

 PROSECUTOR: Okay. What happened next?
 

 OFFICER SUITTS: Still en route to the police department, Mr. Moore stated, as I put in the report, that the only reason that
 
 *744
 
 he ran from officers the night prior was because he didn't want to get the impaired driving charge, the DWI.
 

 PROSECUTOR: Okay. Do you remember with any specificity what he said? You can use your report, if necessary.
 

 OFFICER SUITTS: Yeah, just - I'll read it straight from - from the report. . . . "Mr. Moore went on to advise me he ran from... officers on 5/21/15 [] because he had been drinking and did not want to deal with the driving while impaired charge."
 

 PROSECUTOR: Okay. And was that statement made in response to any questions that you posed to him?
 

 OFFICER SUITTS: No, I did not ask any questions. And the reason I did not ask him any questions, I had not Mirandized him any - in any way because I had no intentions on asking any questions.
 

 Based upon this testimony, the trial court found that defendant's statements were "spontaneous utterances" that were "not made in response to questions posed to him by law enforcement" and that "defendant's statement in response to a radio communication by a law enforcement officer
 
 to Suitt
 
 cannot be interpreted to be an interrogation or questioning of defendant." (emphasis in original). The court concluded that "[d]efendant's statements were not coerced, and were not obtained in violation of his constitutional rights."
 

 The thrust of defendant's appellate argument is that Officer Suitt should have known that the conversation between Officer Suitt and another officer would be reasonably likely to elicit an incriminating response. Defendant asserts that defendant had a reasonable "perception that he was expected to participate in the conversation" initiated over the police radio by Officer Suitt's superior officer. Defendant also notes that before Officer Suitt turned off the video recording in the patrol car, he asked defendant where he had been walking. There is no indication in the record that defendant answered this question. Moreover, defendant's inculpatory statements did not pertain to his walk on the morning of his arrest.
 

 Defendant has not directed our attention to appellate jurisprudence in which the court held that a brief exchange between two law enforcement officers was the functional equivalent of interrogation, and we note that in the leading case on this issue,
 
 Rhode Island v. Innis,
 

 446 U.S. 291
 
 ,
 
 100 S.Ct. 1682
 
 ,
 
 64 L.Ed.2d 297
 
 (1980), the Supreme Court rejected a similar argument. In
 
 Innis,
 
 the defendant was arrested for a homicide. During the drive to the law enforcement center, the officers who had arrested defendant discussed the fact that the firearm used in the murder had not been located, and expressed concern about the possibility that a handicapped child might find the weapon and harm himself. Defendant interrupted the officers' conversation and offered to show them where the gun was located. On appeal, the defendant argued that the officers' discussion was the equivalent of an interrogation. The Supreme Court first enunciated the standard for determining when a defendant is subjected to interrogation:
 

 We conclude that the
 
 Miranda
 
 safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term `interrogation' under
 
 Miranda
 
 refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect..... But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
 

 Innis,
 

 446 U.S. at 301
 
 ,
 
 100 S.Ct. at 1690
 
 ,
 
 64 L.Ed.2d at 307-08
 
 . The Court then applied this standard to the facts of
 
 Innis,
 
 and held that the conversation conducted by the officers in the defendant's presence did not constitute the equivalent of an interrogation:
 

 [W]e conclude that the respondent was not "interrogated" within the meaning of
 
 Miranda
 
 .... [T]he conversation between [the officers] included no express questioning of the respondent. Rather, that conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent
 
 *745
 
 was invited. Moreover, it cannot be fairly concluded that the respondent was subjected to the "functional equivalent" of questioning. It cannot be said, in short, that [the officers] should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent.
 

 Innis,
 
 at 302,
 
 100 S.Ct. at 1690
 
 ,
 
 64 L.Ed.2d at 309
 
 . We find
 
 Innis
 
 functionally indistinguishable from the present case. Indeed, the officers' conversation in
 
 Innis
 
 was more likely to elicit a response from the defendant, given the emotional tone of the officers' concern for the safety of a child, than would the question asked over the police radio in the presence of this defendant in the present case.
 

 We have also considered the holding of our Supreme Court in
 
 State v. DeCastro,
 

 342 N.C. 667
 
 ,
 
 467 S.E.2d 653
 
 (1996). In
 
 DeCastro,
 
 the defendant was arrested on charges of robbery and murder and was taken to the law enforcement center, where an officer took possession of defendant's clothing and personal effects. This officer asked another law enforcement officer who was present whether defendant could retain custody of money that was in his possession. Defendant overheard and volunteered that he "had some of my own money, too" a statement that supported the charge of robbery.
 
 DeCastro,
 

 342 N.C. at 678
 
 ,
 
 467 S.E.2d at 658
 
 . On appeal, defendant argued that "the detective's question, made in defendant's presence while he was in police custody, could have been perceived by defendant as seeking a response" and was therefore "the functional equivalent of police interrogation in violation of his constitutional rights."
 
 DeCastro,
 
 at 683,
 
 467 S.E.2d at 661
 
 . Our Supreme Court rejected this argument, holding that defendant's statement "was not the result of interrogation in derogation of defendant's right to have an attorney present during questioning. The question by Detective Berube regarding whether defendant could keep the money from his pocket was not directed to defendant, but to Agent McDougall."
 
 DeCastro,
 
 at 684, 447 S.E.2d at 661.
 

 We conclude that defendant has failed to show that he was subjected to the functional equivalent of an interrogation, and that the trial court did not err by denying his motion to suppress.
 

 V. Conclusion
 

 For the reasons discussed above, we conclude that the trial court did not err by denying defendant's motion to continue or his motion to suppress the statements he made to Officer Suitt, but that the trial court erred by admitting into evidence the cell phone copy of a surveillance video from the convenience store. We hold, however, that given the strength of the other evidence offered by the State, this error was not prejudicial to defendant.
 

 NO ERROR IN PART, NO PREJUDICIAL ERROR IN PART.
 

 Judges BRYANT and INMAN concur.